**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARJORIE FRIEDMAN SCHERR,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Case No. 08 C 2098 |
| | ) | |
| **MARRIOTT INTERNATIONAL, INC.,** | ) | Judge: Matthew F. Kennelly |
| and **DOES 1 through 10,** inclusive | ) | |
| | ) | Magistrate: Michael T. Mason |
| Defendant. | ) | |

### MOTION TO TRANSFER VENUE

**NOW COMES** Defendant, **MARRIOTT INTERNATIONAL, INC.,** by and through one of its attorneys, PAUL GAMBOA of JOHNSON & BELL, LTD., and moves this Honorable Court, pursuant to 28 U.S.C.A. § 1404(a), to transfer venue to the U.S. District Court for the District of Kansas, Kansas City Division, and in support thereof states as follows:

### STATEMENT OF JURISDICTION

1.     Jurisdiction is properly vested in both the United States District Courts for the Northern District of Illinois, Eastern Division, and for the District of Kansas, Kansas City Division.  The Plaintiff, at the time her lawsuit was commenced and at all relevant times has been a citizen of Illinois.  Defendant, Marriott International, Inc.[1], at all relevant times has been a Delaware corporation with its principal place of business in Bethesda, Maryland.  Therefore, for diversity purposes, it is a citizen of the States of Delaware and Maryland.  Based upon the amount of damages sought in the Plaintiff's complaint as well as the injuries claimed, the amount in controversy exceeds the minimum required for jurisdiction to be asserted pursuant to 28 U.S.C. § 1332.

---

[1] The subject Hotel was actually managed by Courtyard Management Corporation, not Marriott International, Inc.  Courtyard Management Corporation is also a Delaware corporation with its principal place of business in Bethseda, Maryland.

**STATEMENT OF VENUE**

2.      Venue is proper in both the United States District Court for the Northern District of Illinois, Eastern Division, and the United States District Court for the District of Kansas, Kansas City Division, pursuant to 28 U.S.C. §§ 1391(a)(1) & (2). Defendant Marriott International does business in Cook County, Illinois, and therefore, resides in Illinois for venue purposes.  It also does business in Johnson County, Kansas and therefore, resides in Kansas for venue purposes.  The incident giving rise to Plaintiff's claims occurred in Overland Park, Johnson County, Kansas.

**FACTUAL BACKGROUND**

3.      Plaintiff, Marjorie Friedman Scherr, filed a Complaint in the Circuit Court of Cook County, Illinois against Marriott International Inc., averring that on March 19, 2006, the Plaintiff/hotel guest allegedly sustained personal injuries after a bathroom door allegedly closed upon her and caused her to fall at the Courtyard Kansas City/Overland Park Hotel.  A copy of Plaintiff's Complaint is attached hereto, labeled as Exhibit "A," and incorporated herein by reference.

4.      Marriott International, Inc. filed a Notice of Removal on April 14, 2008, removing this matter from the Circuit Court of Cook County to the United States District Court for the Northern District of Illinois, Eastern Division.   A copy of Defendant's Notice of Removal is attached hereto, labeled as Exhibit "B," and incorporated herein by reference.

5.      On April 23, 2008, Marriott International, Inc. filed its Answer to Plaintiff's Complaint, denying the negligent conduct attributed to it and denying that its conduct caused or contributed to cause Plaintiff's injuries and damages.  A copy of Defendant's Answer is attached hereto, labeled as Exhibit "C," and is incorporated herein by reference.

**PRINCIPLES UNDERPINNING A MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

6.    28 U.S.C. § 1404(a) provides that:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a) (West 2008).

7.    The determination of whether a case should be transferred to another venue pursuant to § 1404(a) is committed to the sound discretion of the trial court. Coffey, 796 F.2d at 219.

8.    A transfer pursuant to § 1404(a) is appropriate if the moving party shows that: 1) venue is proper in the transferor district; 2) venue and jurisdiction are proper in the transferee district; and 3) the transfer will serve the convenience of the witnesses, the convenience of the parties, and the interests of justice. Vandeveld v. Christoph, 877 F.Supp. 1160, 1167 (N.D. Ill. 1995). In determining whether such a motion should be granted, the court must seek to promote the efficient administration of justice and not merely the private interests of the parties. Hanley v. Omarc, Inc., 6 F.Supp.2d 770, 774 (N.D. Ill. 1998), citing North Shore Gas Co. v. Salomon, Inc., 896 F.Supp. 786, 791 (N.D. Ill. 1995).

**ARGUMENT**

I.    **VENUE IS PROPER IN THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, NORTHERN DIVISION, THUS SATISFYING THE FIRST ELEMENT**

In applying the facts of the instant matter to the framework set forth above, it is apparent that the first element supporting a transfer of venue is satisfied. Venue is proper in the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(a)(1), because Marriott International, Inc. does business in Cook County, Illinois, and thus resides in Illinois for venue purposes.

II.    **VENUE AND JURISDICTION HAVE ARE PROPER IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF KANSAS, KANSAS CITY DIVISION, SATISFYING THE SECOND ELEMENT**

The United States District Court for the District of Kansas, Kansas City Division can exercise subject matter jurisdiction over the instant suit based upon diversity of citizenship as well as personal jurisdiction over Marriott International, Inc., as it is a resident Defendant doing business in Overland Park, Johnson County, Kansas.  That Marriott International, Inc does business there is relevant for purposes of venue as well, as it is considered to reside in Overland Park, Johnson County, Kansas pursuant to 28 U.S.C. § 1391(a)(1)[2].  Moreover, venue is also proper in U.S. District Court for the District of Kansas, Kansas City Division, pursuant to 28 U.S.C § 1391(a)(2),[3] as the incident giving rise to Plaintiff's claim, her fall, occurred in Overland Park, Johnson County, Kansas.  Therefore, the second element of the three-part test applied to determine the propriety of transferring this matter is satisfied.

III.   **KANSAS IS THE VENUE THAT IS MORE CONVENIENT FOR THE WITNESSES AND PARTIES AND WOULD BETTER SERVE THE INTERESTS OF JUSTICE, SATISFYING THE THIRD ELEMENT**

The final prong of the analysis governing whether or not transfer of this matter is proper contemplates a weighing of the convenience of the witnesses, the convenience of the parties, and the interests of justice.  As the convenience of the witnesses and parties and the interests of justice would be better-served by transferring this matter to the United States District Court for the District of Kansas, the instant motion should be granted.

---

[2] 28 U.S.C. § 1391(a)(1) holds that a civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in a judicial district where any defendant resides, if all defendants reside in the same State.

[3] 28 U.S.C. § 1391(a)(2) holds that a civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

## A. CONSIDERATIONS OF CONVENIENCE

In evaluating the convenience of the parties and witnesses, the court should consider: (1) the Plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums. Hanley, 6 F.Supp.2d at 774, citing North Shore Gas Co., 896 F.Supp. at 791; College Craft Co. Ltd. v. Perry, 889 F.Supp. 1052, 1054 (N.D. Ill. 1995).

### i.  Plaintiff's Choice of Forum is Entitled to Less Deference, as Illinois Lacks Significant Contact with Her Cause of Action

It has been noted that the Plaintiff's choice of forum is normally entitled to substantial deference, particularly where the chosen forum was the Plaintiff's home forum. Hanley, 6 F.Supp.2d at 774-75. However, "where the plaintiff's chosen forum lacks any significant contact with the underlying cause of action, the plaintiff's chosen forum is entitled to less deference." Hanley, 6 F.Supp.2d at 775, citing KAW Transp. Co., 1997 U.S. Dist. LEXIS 3355, *5 (N.D. Ill. 1997); Chicago Rock Island and Pacific R.R. Co. v. Igoe, 220 F.2d 299, 304 (7th Cir. 1955).  A Plaintiff's choice of forum is not dispositive; it will not defeat a well-founded motion to transfer. Hanley, 6 F.Supp.2d at 775

In Hanley, an ERISA matter, the Plaintiffs' chosen forum was Illinois, which also happened to be their home forum. Hanley, 6 F.Supp.2d at 775. The Court, in analyzing the motion to transfer venue, noted that Illinois lacked any significant contacts with the underlying cause of action, and that New Jersey was instead the situs of all material events relevant to the underlying action. Id. The Court thereby held that the fact that Illinois was Plaintiffs' chosen forum was entitled to some, but not substantial, deference. Id.

The principle that a plaintiff's chosen forum is entitled to less deference where it lacks significant contact with the underlying cause of action is equally applicable to personal injury cases premised on diversity jurisdiction. For example, in <u>Cunningham v. Cunningham</u>, 477 F.Supp. 632 (N.D. Ill. 1979), the Plaintiff/Illinois resident brought suit against Defendant/Michigan resident for injuries arising out of a shooting incident that took place in Michigan. <u>Cunningham</u>, 477 F.Supp. at 633. Defendant subsequently moved to transfer the action from the Northern District of Illinois to the Western District of Michigan. <u>Id.</u> The court noted that the Plaintiff's initial choice of forum would be trumped by considerations of the convenience of witnesses and the interests of justice, and the matter was transferred to the Western District of Michigan. <u>Cunningham</u>, 477 F. Supp. at 636.

From a review of the Plaintiff's Complaint and as will be set forth more fully in the section below, it is evident that Illinois lacks significant contacts with the underlying cause of action. The Plaintiff's accident took place at the Courtyard Kansas City/Overland Park Hotel in Overland Park, Kansas. *See* Exhibit A, par. 3, 6-14. In addition, as is reflected by those records provided by the Plaintiff, Ms. Freidman Scherr received almost an entire month of continuous medical care, including surgery, in the Overland Park or Kansas City area[4]. The only relevant contact Illinois has with the case is that the Plaintiff resides instate and that she received some additional medical treatment there. As Kansas has many more significant contacts, the Plaintiff is entitled to some, but not substantial, deference when determining the propriety of transferring this matter to the United States District Court for the District of Kansas.

---

[4] Plaintiff's course of medical treatment, as referenced throughout the instant motion, is reflective of and supported by medical records provided by Plaintiff's counsel.

### ii. The Situs of the Material Events is Kansas, Thus Weighing in Favor of Transfer

It is clear that the operative facts giving rise to the instant action have occurred outside of Illinois. While Plaintiff resides in Illinois, Kansas is the situs of all material events related to this cause of action, as it is the location of this incident giving rise to this premises liability action. The subject property, several of the employee witnesses of the Courtyard Kansas City/Overland Park Hotel, and many of Plaintiff's treating physicians are located in Kansas.

Chrystal Smith, the Courtyard Kansas City/Overland Park front desk associate who spoke to the Plaintiff's husband about the incident and Plaintiff's alleged injuries, resides in Overland Park, Kansas. *See* Affidavit of Paul Gamboa attached hereto, labeled Exhibit "D," and incorporated herein by reference. Daniel Schoch, another associate working at the front desk at the time of the occurrence, is also believed to have knowledge of the occurrence, and is believed to have assisted the Plaintiff after her fall and also assisted in securing medical assistance for her. Mr. Schoch now resides in Kapolei, Hawaii. Exhibit D.

Sally Crowther, the former Courtyard Property Manager, and Jeff Miles, the Courtyard General Manager, are both believed to have information relative to the Hotel's policies and procedures. Ms. Crowther resides in Olathe, Kansas, and Mr. Miles resides in Kansas City, Missouri.

On March 19, 2006, Plaintiff was taken from the Defendant's premises via the Overland Park Fire Department ambulance to the Overland Park Regional Medical Center, located in Overland Park, Kansas. There, she underwent surgery for a fractured right forearm. She was treated at Overland Park Regional Medical Center from March 19, 2006 until March 24, 2006. While at the Overland Park Regional Medical Center, Plaintiff also received care from Elder Care of Kansas City.

After being discharged from Overland Park Regional Medical Center, the Plaintiff was referred to Mid-America Rehabilitation Hospital, which is also located in Overland Park, Kansas. From March 24, 2006 until April 8, 2005, Plaintiff then received continuous medical care at the Mid-American Rehabilitation Hospital.

Upon returning to the Illinois area, Plaintiff received intermittent medical care (ten total visits over a seven-plus month period) from Loyola University Medical Center. Plaintiff also treated at Ingalls Home Care for physical therapy upon her return to Illinois.

In analyzing the situs of material events involved in this matter, it can be seen that they are concentrated in and around Kansas: the Defendant premises and site of Plaintiff's injury is there, as are several of the Defendant employee-witnesses. Furthermore, Plaintiff received almost three weeks of daily medical treatment in Kansas from a number of different medical providers. The medical treatment received in Illinois is rather sparse by comparison.

As one District Court has succinctly noted, when analyzing a motion to transfer venue, "where the operative facts are concentrated in a specific district other than the district in which plaintiff has sued, the action should be transferred to that district, notwithstanding plaintiff's choice of forum." Lewis v. C.R.I., Inc., 2003 U.S. Dist. LEXIS 6362 *12 (S.D.N.Y. 2003), citing Totonelly v. Cardiology Assoc. of Corpus Christi, 932 F.Supp. 621, 623 (S.D.N.Y. 1993). As such operative facts in this matter are concentrated in Kansas, it weighs heavily in favor of transferring this action from the United States District Court of Illinois, Eastern Division to the United States District Court for the District of Kansas, Kansas City Division.

### iii.  The Relative Ease of Access to Sources of Proof Militate in Favor of Transferring this Matter to Kansas

The next factor considered in this analysis is the relative ease of access to sources of proof. Hanley, 6 F.Supp.2d at 774. As stated above, the relevant sources of proof would primarily include the premises, the employees who witnessed the events immediately subsequent to the occurrence and who have knowledge of Courtyard Kansas City/Overland Park Hotel's policies and procedures, and Plaintiff's treating physicians. As noted above, such sources of proof are concentrated in Kansas, suggesting that a transfer of venue is warranted.

### iv.  Convenience of Parties and Witnesses

It has been noted that "[t]he convenience of witnesses is often viewed as the most important factor in the transfer balance." Hanley, 6 F.Supp.2d at 775, *quoting* Rose v. Franchetti, 713 F.Supp. 1203, 1214 (N.D. Ill. 1989). "The determination of whether a particular venue is more convenient for the witnesses should not turn on which party produces a longer witness list." Id., *citing* Chemical Waste Management, 870 F.Supp. 870, 876 (N.D. Ill. 1994). Rather, the court is to look to the nature and quality of the witnesses' testimony with respect to the issues of the case. Id., *citing* Vandeveld, 877 F.Supp. at 1168. "The court must also consider whether these witnesses will be subject to compulsory process and what it will cost to obtain the attendance of willing witnesses." Bally Mfg. Corp. v. Kane, 698 F.Supp. 734, 738 (N.D. Ill. 1988). As for the parties, the court is to consider their respective residences and their ability to bear the expenses of litigating in a particular forum. Hanley, 6 F.Supp.2d at 776, *citing* Habitat Wallpaper & Blinds, Inc. v. K.T. Scott, Ltd. P'ship., 807 F.Supp. 470, 474 (N.D. Ill. 1992). It should be also noted that the convenience of counsel is not a factor to be considered when deciding a motion to transfer venue. Igoe, 220 F.2d at 304.

Here, the majority of the Courtyard Kansas City/Overland Park employees having knowledge of the occurrence, having knowledge of the premises generally and complained-of room specifically, and having knowledge of relevant policies and procedures work and reside in or near Kansas. A great number of Plaintiff's medical providers, who will testify as to Plaintiff's injuries and subsequent treatment, reside in Kansas. While it is true that the Plaintiff and some of her medical providers do reside in Illinois, a greater number of witnesses whose testimony is relevant to the expected issues to arise during the litigation of this case reside in Kansas. As such, this factor also weighs heavily in favor of transferring this matter to the District of Kansas.

## B. THE INTERESTS OF JUSTICE

The final component of the three-part transfer of venue test, consideration of the interests of justice, *may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result.* Coffey v. Van Dorn Iron Works, 796 F.2d, 217, 221 (7th Cir. 1986) (citations omitted, emphasis added). An analysis of the interests of justice also contemplates the weighing of several factors, including such considerations as (1) the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable law; (3) the desirability of resolving controversies in their locale; and (4) the relation of the community to the occurrence at issue. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-509 (1947); Hanley, 6 F.Supp.2d at 777, *citing* Symons Corp. v. Southern Forming & Supply, Inc., 954 F.Supp. 184, 187 (N.D. Ill.1997). "The administration of justice is served more efficiently when the action is litigated in the forum that is 'closer to the action.'" Hanley, 6 F.Supp.2d at 777, *quoting* Paul v. Land's End, Inc., 742 F.Supp. 512, 514 (N.D. Ill. 1990). Thus, even if this Court were to determine that the convenience of the witnesses and parties do not warrant transfer to Kansas, the interests of justice do.

i. **The Caseload Per Judge is Comparatively Lighter for The District of Kansas, and the Instant Suit is More Likely to Proceed to Trial at an Earlier Date were it Transferred**

This dispute is more apt to be resolved in an expeditious manner in the District of Kansas than it will in the Northern District of Illinois. In 2007, there were 259 civil actions per judgeship in the District of Kansas, while there were 346 civil actions per judgeship in the Northern District of Illinois. *See* statistics for the respective districts, obtained from the U.S. Courts' website (www.uscourts.gov/library/statisticalreports), attached hereto, labeled as Exhibit "E" and Exhibit "F," respectively, and incorporated herein by reference. Not surprisingly, those civil cases filed in the Northern District of Illinois take a median time of 6.7 months longer to litigate from the time of filing to trial than those filed in the District of Kansas. *See* Exhibits E and F. In light of the comparatively lighter total caseload in the District of Kansas, as well as its faster disposition time, transfer of this matter to Kansas is warranted.

ii. **Kansas Courts are More Likely to be Familiar with Kansas Substantive Law**

Under an application of Illinois choice of law principals[5], Kansas law will govern the substantive issues raised in this matter. Illinois courts use the most significant relationship test for determining the choice of law in tort cases. <u>Esser v. McIntyre</u>, 169 Ill. 2d 292, 297-298, 661 N.E.2d 1138, 1141 (1996). The test requires a court to evaluate the following factors to determine which State's law governs: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the

---

[5] As the recipient of a diversity case transferred under the change of venue statute, the choice of law rules of the transferor court's forum State must be applied. <u>Providence Hospital v. Rollins Burdick Hunter of Illinois</u>, 824 F.Supp. 131, 133 (N.D. Ill. 1993),

parties is centered. Id. Illinois courts generally accord the place of injury factor the greatest weight under this test. Esser, 169 Ill.2d at 298.

As noted throughout the instant motion and is reflected in the pleadings, the place of the injury is Kansas. The alleged injury-causing conduct, various negligent acts and omissions on the part of the Defendant, occurred in Kansas. *See* Exhibit A, par. 10-13. While it is true that the Plaintiff resides in Illinois and the Defendant resides in both Kansas and Illinois, this is the only such relationship Illinois has with this lawsuit, as the parties' relationship was indubitably centered in Kansas. Therefore, Kansas substantive law would govern this action. As the District of Kansas would likely be more familiar with Kansas law than the Northern District of Illinois, a transfer is proper.

### iii.    It is Preferable that a Jury of Kansas Residents Resolve a Premises Liability Controversy Which Arose in its Locale, thus Imposing Community Standards and Judgment

As this premises liability case involves a hotel in Kansas, the residents of Kansas have a greater interest in resolving this controversy than do the residents of Illinois. In a tort-based claim such as this, the potential imposition of liability and an award for damages by a jury serves, in part, as a deterrent for future negligent behavior. As such, it makes much more sense that a Kansas resident corporation be held to whatever standards the members of its community deem appropriate. As Kansas is "closer to the action" than is Illinois, this matter should be transferred there.

### CONCLUSION

Applying all of the aforementioned factors to the facts of the present case, transfer to the District of Kansas, Kansas City Division would be the correct and just result. Kansas is a proper venue, more convenient for the witnesses and parties, is

the situs of all material events herein, is the local setting of the occurrence, and the interests of justice clearly favor it. In fact, even were this Court to find that Kansas was not a substantially more convenient venue for the witnesses or the parties, the interests of justice so greatly favor that this matter be resolved in the District of Kansas that transfer would still be warranted.

For the foregoing reasons, Defendant, Marriott International, Inc., respectfully moves this Honorable Court for an Order granting its Motion to Transfer Venue to the U.S. District Court for the District of Kansas, Kansas City Division.

Respectfully submitted,

JOHNSON & BELL, LTD.

By:     /s/Paul Gamboa
        Paul Gamboa, one of the
        Attorneys for Marriott International, Inc.

JOHNSON & BELL, LTD.
Attorney for Defendants
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603
Telephone: (312) 372-0770
Attorney No.: 06347

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| MARJORIE FRIEDMAN SCHERR,     ) | Case No. **D8L 062013** |
|     ) | |
| Plaintiff,     ) | **COMPLAINT FOR DAMAGES** |
|     ) | **(Premises Liability, Negligence)** |
| vs.     ) | |
|     ) | |
| MARRIOTT INTERNATIONAL, INC.,     ) | |
| and DOES 1 through 10, inclusive,     ) | |
|     ) | **[JURY DEMAND]** |
| Defendants. _____     ) | |

Plaintiff Marjorie Friedman Scherr alleges:

## INTRODUCTION

1. This is an action for personal injuries arising out of an incident that occurred at the Marriott Courtyard hotel in Overland Park, Kansas, on March 19, 2006, when plaintiff – an elderly guest – was knocked to the ground by a hinged internal door in a room that was reserved for disabled individuals.

## PARTIES

2. Plaintiff Marjorie Friedman Scherr, at all times material herein, was a resident of the state of Illinois, in Cook County.

3. Defendant Marriott International, Inc., is a corporation headquartered in Washington, D.C. At all times relevant herein, Marriott owned and operated the Courtyard Kansas City Overland Park hotel in Overland Park, Kansas. At all times relevant herein, Marriott does business in this jurisdiction, and the business it conducts is directly or indirectly related to the events underlying this complaint.

4. On information and belief, plaintiff alleges that DOES TWO through TEN were the operators, employers, agents or individuals somehow responsible for the injuries

caused herein. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does One through Ten inclusive, and therefore, sues these defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believes, and thereupon allege, plaintiffs' injuries as herein alleged were proximately caused by these defendant DOES' acts.

## JURISDICTION AND VENUE

5. This court has jurisdiction of this controversy because defendant conducts business in this jurisdiction. Venue is proper in Cook County pursuant to 735 ILCS 5/2-101 & 2-102 because the defendants are authorized to transact business in Illinois and are residents of Cook County as they have offices and do business in Cook County, and because the transaction or some part thereof out of which this cause of action arises occurred in Cook County.

## GENERAL ALLEGATIONS

6. Sometime prior to March 19, 2006, while residing in Cook County, plaintiff made a reservation to stay at the Marriott Courtyard hotel in Overland Park, Kansas, for a family trip to the area. At that time, plaintiff was a 76-year-old woman who suffered from physical disabilities and impairments on her mobility. Although she was not wheelchair bound at the time, plaintiff could move around safely only with the assistance of a walker. When plaintiff made her reservation for the hotel, she specifically inquired about the location of the room and the amenities available, given her physical limitations. In making her reservations, plaintiff was assured that she would be staying at a room that was specially designated for disabled hotel guests.

2

7. On or about March 19, 2006, at approximately 1:00 a.m., while in the bathroom of her hotel room, plaintiff attempted to exit the bathroom through an internal heavy hinged door. To do so, plaintiff held onto her walker with one hand and with the other opened the bathroom door leading into the interior of her room. As plaintiff rolled her walker and attempted to leave the bathroom, the hinged door swung closed upon plaintiff, slamming her body hard against the floor. In the collision with the door and impact with the floor, plaintiff suffered significant bodily injuries, including a broken wrist, and required immediate emergency medical treatment.

8. As a proximate result of the negligence and unlawfulness of defendants and each of them, herein alleged, plaintiff sustained numerous injuries to her body all of which injuries have caused and continue to cause plaintiff great mental, physical pain and suffering. These injuries included an open and compound fracture to the radius and ulna of the right forearm, which required two separate surgeries and a lifetime risk of devastating and deteriorating health. These injuries will result in permanent disabilities to plaintiffs.

9. As a further and proximate result of the negligence of defendants, and each of them as herein alleged, plaintiff was required to and did employ physicians and other medical providers for medical examination, treatment and care of these injuries and did incur and continue to incur medical and incidental expenses in excess of $20,000.

**INNKEEPER DUTY TO PROTECT AGAINST DANGEROUS CONDITIONS**

10. As innkeepers, defendants owed plaintiff a special duty of care to take reasonable measures and to protect her and other guests from harm and unnecessary

3

dangerous conditions. This included an obligation to carefully inspect disability-accessible features on the premises, maintain them in good working order, repair aspects that might pose a danger, and warn guests of risks of injury. Defendants breached that duty of care as stated herein.

11. At the time of plaintiff's fall, the heavy door on the bathroom at defendants' hotel were dangerous, unsafe and presented an unnecessary and unacceptable risk to hotel guests, especially those who are disabled and request special amenities in connection with their disabilities. In particular, the heavy hinged door at the time of plaintiff's fall had an automatic door-closing device (either spring or pneumatic) which was set to close the door without delay, well before the elderly and disabled guest was able to clear the threshold. It is expected and foreseeable that elderly and disabled guests would be injured by the heavy hinged door closing automatically upon them, and it was therefore negligence and a breach of duty for the hotel to have such devices and fail to replace them prior to plaintiff's injury.

12. Defendants also failed to warn plaintiff or other guests of the risks of injury by the heavy hinged door. On information and belief, defendants failed to conduct reasonable efforts at inspections, maintenance, repair, and safety checks consistent with their innkeeper obligations.

13. The dangerous condition of the bathroom door and defendants' negligence as set forth herein, were the proximate causes of plaintiff's fall and related injuries, and the types of injuries she sustained as a result are exactly those that are most likely foreseeable from the dangerous condition and negligence of defendants.

A

14. On information and belief, defendants and/or hotel employees had actual and constructive notice of the dangerous condition prior to plaintiff's injury.

## PRAYER FOR RELIEF

Wherefore plaintiff demands judgment for compensatory damages, in an amount in excess of ~~Fifty~~ One hundred Thousand ($~~50,000~~ 100,000) dollars, jointly and severally from each defendant, plus costs, attorneys fees and for other such relief as the Court may deem just and proper.

Respectfully submitted,

Dated: March 17, 2008

By: _____
Julie Friedman Ehrlich
One of the attorneys for plaintiff

Julie Friedman Ehrlich
Attorney at Law
P.O. Box 1334
Highland Park, Illinois 60035
Telephone: (847) 414-8615
Attorney # 6180634

Jeremy L. Friedman
Attorney at Law
2801 Sylhowe Road
Oakland, CA 94602
Telephone: (510) 530-9060
Facsimile: (510) 530-9087
Attorney # 6199791
Attorneys for Plaintiff
Marjorie Friedman Scherr

5

| 2120 - Served | 2121 - Served | |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | CCG N001-10M-1-07-05 ( ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, _____ Law _____ DIVISION

(Name all parties)

Marjorie Friedman Scherr

plaintiff,

v.

No. 08L062013

Marriott International, Inc. and Does
1 through 10, inclusive defendants.

Please Serve:
Registered Agent
Prentice-Hall Corporation
33 North La Salle St.
Chicago, IL 60602

**SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☐ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

☒ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 6180 634

Name: Julie Friedman Ehrlich

Atty. for: plaintiff Marjorie Friedman Scherr

Address: PO Box 1334

City/State/Zip: Highland Park IL 60035

Telephone: (847) 414-8615

Service by Facsimile Transmission will be accepted at: _____

WITNESS, 3/19/08

Dorothy Brown
Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

(Area Code) (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARJORIE FRIEDMAN SCHERR,** | ) | FILED |
| | ) | APRIL 14, 2008         YM |
| Plaintiff, | ) | 08CV2098 |
| | ) | JUDGE KENNELLY |
| -vs- | ) Case No. | MAGISTRATE JUDGE MASON |
| | ) | |
| **MARRIOTT INTERNATIONAL, INC.,** | ) Judge: | |
| and **DOES 1 through 10,** inclusive | ) | |
| | ) Magistrate: | |
| Defendant. | ) | |

**NOTICE OF REMOVAL**

Pursuant to *Title 28 U.S.C. §1441, et seq.,* and *28 U.S.C. §1332,* Defendant, **MARRIOTT INTERNATIONAL, INC.,** by and through one of its attorneys, ROBERT M. BURKE of JOHNSON & BELL, LTD., hereby gives notice of the removal of the above captioned action from the Circuit Court of Cook County, Cause No. 08 L 62013, to the United States District Court, Northern District of Illinois, Eastern Division, and in support thereof, states the following:

1.    On or about March 17, 2008, Plaintiff, Marjorie Friedman Scherr, initiated the above captioned lawsuit by the filing of a Complaint entitled Marjorie Friedman Scherr v. Marriott International, Inc., and Does 1 through 10, docket No. 08 L 62013 in the Circuit Court of Cook County, Illinois. A copy of the initial Complaint at Law is attached hereto, labeled Exhibit "A", and incorporated herein by reference.

2.    On or about March 17, 2008, Plaintiff caused a Summons to be issued for service upon the registered agent of Marriott International, Inc.   A copy of said Summons is attached hereto, labeled Exhibit "B", and incorporated herein by reference.

3.    Service was obtained on Marriott International, Inc.'s registered agent on March 26, 2008.

4.    The United States District Court for the Northern District of Illinois, Eastern Division, has jurisdiction over the above described action pursuant to 28 U.S.C. §1332 and 28 U.S.C. §1441 for the following reasons:

(a)    Marjorie Friedman Scherr, at the time the lawsuit was commenced and at all relevant times, has been a resident and citizen of the State of Illinois as alleged in paragraph 2 of Plaintiff's Complaint;

(b)    The Defendant, Marriott International, Inc., at all relevant times, has been a Delaware corporation with its principal place of business in Bethesda, Maryland; therefore, for diversity of citizenship purposes, it is a citizen of the States of Delaware and Maryland;

(c)    According to the allegations contained in the Complaint filed by the Plaintiff herein, the amount of damages sought in this action is in excess of $100,000.00.    Moreover, Plaintiff has alleged that she sustained various injuries including an open and compound fracture to the radius and ulna of her right forearm, which required two (2) separate surgeries and a lifetime risk of devastating and deteriorating health, all of which have resulted in permanent disabilities;

(d)    Based upon the foregoing, it is Defendant's good faith belief that the amount in controversy in this action exceeds $75,000.00 exclusive of interest and costs;

(e)    While Plaintiff has named some "John Doe" Defendants, this does not defeat the named defendant's right to remove a diversity case if its citizenship is diverse from that of all plaintiffs. *Howell v. Tribune Entertainment Company*, 106 F.3d 215,218 (7th Cir. 1997);

(f)    This Notice of Removal is being filed with the Clerk of the United States District Court for the Northern District, Eastern Division, within thirty (30) days of service of the Summons and Complaint on this Defendant;

(g)    This action, based upon diversity of citizenship and the amount in controversy is, therefore, properly removable, pursuant to *28 U.S.C. § 1441(a)*.

2

5.      Defendant will promptly file a copy of this Notice of Removal with the Clerk of the Circuit Court of Cook County, Illinois.

**WHEREFORE, MARRIOTT INTERNATIONAL, INC.,** respectfully requests that this case proceed before this Court as an action properly removed.

Respectfully submitted,

JOHNSON & BELL, LTD.,

By:    /s/Robert M. Burke
         Robert M. Burke, One of the
         Attorneys for Marriott
         International, Inc.

ROBERT M. BURKE
JOHNSON & BELL, LTD.,
33 West Monroe Street, #2700
Chicago, Illinois 60603
Telephone: (312) 0770
Attorney No. 06347

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

MARJORIE FRIEDMAN SCHERR,       )
                            )    Case No. **08L062013**
Plaintiff,                      )
                            )    **COMPLAINT FOR DAMAGES**
vs.                             )    **(Premises Liability, Negligence)**
                            )
MARRIOTT INTERNATIONAL, INC.,   )
and DOES 1 through 10, inclusive, )
                            )    **[JURY DEMAND]**
Defendants.                     )

Plaintiff Marjorie Friedman Scherr alleges:

### INTRODUCTION

1. This is an action for personal injuries arising out of an incident that occurred at

the Marriott Courtyard hotel in Overland Park, Kansas, on March 19, 2006, when

plaintiff – an elderly guest – was knocked to the ground by a hinged internal door in a

room that was reserved for disabled individuals.

### PARTIES

2. Plaintiff Marjorie Friedman Scherr, at all times material herein, was a resident

of the state of Illinois, in Cook County.

3. Defendant Marriott International, Inc., is a corporation headquartered in

Washington, D.C. At all times relevant herein, Marriott owned and operated the

Courtyard Kansas City Overland Park hotel in Overland Park, Kansas. At all times

relevant herein, Marriott does business in this jurisdiction, and the business it conducts is

directly or indirectly related to the events underlying this complaint.

4. On information and belief, plaintiff alleges that DOES TWO through TEN

were the operators, employers, agents or individuals somehow responsible for the injuries



DEFENDANT'S EXHIBIT A

caused herein. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does One through Ten inclusive, and therefore, sues these defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believes, and thereupon allege, plaintiffs' injuries as herein alleged were proximately caused by these defendant DOES' acts.

### JURISDICTION AND VENUE

5. This court has jurisdiction of this controversy because defendant conducts business in this jurisdiction. Venue is proper in Cook County pursuant to 735 ILCS 5/2-101 & 2-102 because the defendants are authorized to transact business in Illinois and are residents of Cook County as they have offices and do business in Cook County, and because the transaction or some part thereof out of which this cause of action arises occurred in Cook County.

### GENERAL ALLEGATIONS

6. Sometime prior to March 19, 2006, while residing in Cook County, plaintiff made a reservation to stay at the Marriott Courtyard hotel in Overland Park, Kansas, for a family trip to the area. At that time, plaintiff was a 76-year-old woman who suffered from physical disabilities and impairments on her mobility. Although she was not wheelchair bound at the time, plaintiff could move around safely only with the assistance of a walker. When plaintiff made her reservation for the hotel, she specifically inquired about the location of the room and the amenities available, given her physical limitations. In making her reservations, plaintiff was assured that she would be staying at a room that was specially designated for disabled hotel guests.

2

7. On or about March 19, 2006, at approximately 1:00 a.m., while in the bathroom of her hotel room, plaintiff attempted to exit the bathroom through an internal heavy hinged door. To do so, plaintiff held onto her walker with one hand and with the other opened the bathroom door leading into the interior of her room. As plaintiff rolled her walker and attempted to leave the bathroom, the hinged door swung closed upon plaintiff, slamming her body hard against the floor. In the collision with the door and impact with the floor, plaintiff suffered significant bodily injuries, including a broken wrist, and required immediate emergency medical treatment.

8. As a proximate result of the negligence and unlawfulness of defendants and each of them, herein alleged, plaintiff sustained numerous injuries to her body all of which injuries have caused and continue to cause plaintiff great mental, physical pain and suffering. These injuries included an open and compound fracture to the radius and ulna of the right forearm, which required two separate surgeries and a lifetime risk of devastating and deteriorating health. These injuries will result in permanent disabilities to plaintiffs.

9. As a further and proximate result of the negligence of defendants, and each of them as herein alleged, plaintiff was required to and did employ physicians and other medical providers for medical examination, treatment and care of these injuries and did incur and continue to incur medical and incidental expenses in excess of $20,000.

## INNKEEPER DUTY TO PROTECT AGAINST DANGEROUS CONDITIONS

10. As innkeepers, defendants owed plaintiff a special duty of care to take reasonable measures and to protect her and other guests from harm and unnecessary

dangerous conditions. This included an obligation to carefully inspect disability-accessible features on the premises, maintain them in good working order, repair aspects that might pose a danger, and warn guests of risks of injury. Defendants breached that duty of care as stated herein.

11. At the time of plaintiff's fall, the heavy door on the bathroom at defendants' hotel were dangerous, unsafe and presented an unnecessary and unacceptable risk to hotel guests, especially those who are disabled and request special amenities in connection with their disabilities. In particular, the heavy hinged door at the time of plaintiff's fall had an automatic door-closing device (either spring or pneumatic) which was set to close the door without delay, well before the elderly and disabled guest was able to clear the threshold. It is expected and foreseeable that elderly and disabled guests would be injured by the heavy hinged door closing automatically upon them, and it was therefore negligence and a breach of duty for the hotel to have such devices and fail to replace them prior to plaintiff's injury.

12. Defendants also failed to warn plaintiff or other guests of the risks of injury by the heavy hinged door. On information and belief, defendants failed to conduct reasonable efforts at inspections, maintenance, repair, and safety checks consistent with their innkeeper obligations.

13. The dangerous condition of the bathroom door and defendants' negligence as set forth herein, were the proximate causes of plaintiff's fall and related injuries, and the types of injuries she sustained as a result are exactly those that are most likely foreseeable from the dangerous condition and negligence of defendants.

14. On information and belief, defendants and/or hotel employees had actual and constructive notice of the dangerous condition prior to plaintiff's injury.

## PRAYER FOR RELIEF

Wherefore plaintiff demands judgment for compensatory damages, in an amount in excess of ~~Fifty~~ One hundred Thousand ($~~50~~100,000) dollars, jointly and severally from each defendant, plus costs, attorneys fees and for other such relief as the Court may deem just and proper.

Respectfully submitted,

Dated: March 17, 2008

By: _Julie Friedman Ehrlich_

Julie Friedman Ehrlich
One of the attorneys for plaintiff

Julie Friedman Ehrlich
Attorney at Law
P.O. Box 1334
Highland Park, Illinois 60035
Telephone: (847) 414-8615
Attorney # 6180634

Jeremy L. Friedman
Attorney at Law
2801 Sylhowe Road
Oakland, CA 94602
Telephone: (510) 530-9060
Facsimile: (510) 530-9087
Attorney # 6199791
Attorneys for Plaintiff
Marjorie Friedman Scherr

5

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | |
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | CCG N001-10M-1-07-05 ( ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, _____Law_____ DIVISION

(Name all parties)

Marjorie Friedman Scherr

plaintiff,

v.

Marriott International, Inc., and Does
( through 10, inclusive     defendants.

**SUMMONS**

No. 08 L 062017

Please Serve:
Registered Agent
Prentice - Hall Corporation
33 North La Salle St.
Chicago, IL 60602

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☐ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

☒ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

WITNESS, 3/19/08

Atty. No.: 6180634
Name: Julie Friedman Ehrlich
Atty. for: plaintiff Marjorie Friedman Scherr
Address: PO Box 1334
City/State/Zip: Highland Park IL 60035
Telephone: (847) 414-8615

Dorothy Brown
Clerk of Court

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code)  (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**



DEFENDANT'S EXHIBIT
B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **MARJORIE FRIEDMAN SCHERR**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) Case No. 08 C 2098 |
| | ) |
| **MARRIOTT INTERNATIONAL, INC.**, | ) Judge: Matthew F. Kennelly |
| and **DOES 1 through 10,** inclusive | ) |
| | ) Magistrate: Michael T. Mason |
| Defendant. | ) |

### ANSWER TO PLAINTIFF'S COMPLAINT

**NOW COMES** Defendant, **MARRIOTT INTERNATIONAL, INC.**, by and through one of its attorneys, ROBERT M. BURKE of JOHNSON & BELL, LTD., and for its Answer to Plaintiff's Complaint at Law, state as follows:

### INTRODUCTION

1.      This is an action for personal injuries arising out of an incident that occurred at the Marriott Courtyard hotel in Overland Park, Kansas, on March 19, 2006, when plaintiff – an elderly guest – was knocked to the ground by a hinged internal door in a room that was reserved for disabled individuals.

**Answer**:      Marriott International, Inc. admits that Plaintiff has alleged the facts set forth in paragraph 1 of her Complaint and admits that the involved room was accessible to and for disabled persons, but is without knowledge or information sufficient to form a believe as to the truth of the remaining averments contained in paragraph 1 of Plaintiff's Complaint.

### PARTIES

2.      Plaintiff, Marjorie Friedman Scherr, at all times material herein, was a resident of the state of Illinois, in Cook County.

**Answer**:       Marriott International, Inc. admits the allegations contained in paragraph 2 of Plaintiff's Complaint.

3.       Defendant, Marriott International, Inc. is a corporation headquartered in Washington, D.C.   At all times relevant herein, Marriott owned and operated the Courtyard Kansas City Overland Park hotel in Overland Park, Kansas.   At all times relevant herein, Marriott does business in this jurisdiction, and the business it conducts is directly or indirectly related to the events underlying this complaint.

**Answer**:       Marriott International, Inc. states that it is a Delaware corporation with its principal place of business in Bethesda, Maryland.   Further answering, Marriott International, Inc. admits that it does business in Cook County, Illinois, but denies the remaining allegations contained in paragraph 3 of Plaintiff's Complaint.

4.       On information and belief, plaintiff alleges that Does Two through Ten were operators, employers, agents and individuals somehow responsible for the injuries caused herein. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does One through Ten inclusive, and therefore, sues these defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.   Plaintiffs are informed and believe, and thereupon allege, plaintiff's injuries as herein alleged were proximately caused by this defendant's Does' acts.

**Answer**:       Marriott International, Inc. admits that an entity other than Marriott International, Inc. operated the subject Marriott Courtyard Hotel in Overland Park, Kansas at the time and place alleged.   Further answering, Marriott International, Inc. is without knowledge or information sufficient to

form a belief as to the truth of the remaining averments contained in paragraph 4 of Plaintiff's Complaint.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction of this controversy because defendant conducts business in this jurisdiction.   Venue is proper in Cook County pursuant to 735 ILCS 5/2-101 & 2-192 because the defendants are authorized to transact business in Illinois and are residents of Cook County as they have offices and do business in Cook County, and because the transaction or some part thereof out of which this cause of action arises occurred in Cook County.

**Answer**:    Marriott International, Inc. admits that jurisdiction and venue properly lie in Cook County.

## GENERAL ALLEGATIONS

6.    Sometime prior to March 19, 2006, while residing in Cook County, Plaintiff made a reservation to stay at the Marriott Courtyard hotel in Overland Park, Kansas for a family trip to the area.  At that time, plaintiff was a 76 year old woman who suffered from physical disabilities and impairments on her mobility.  Although she as not wheelchair bound at the time, plaintiff could move around safely only with the assistance of a walker.  When plaintiff made her reservation for the hotel, she specifically inquired about the location of the room and the amenities available, given her physical limitations.  In making her reservations, plaintiff was assured that she wold be staying at a room that was specifically designated for disabled hotel guests.

**Answer**:    Marriott International, Inc. admits that Plaintiff made a reservation to stay at a handicapped accessible room at the subject hotel but is without sufficient knowledge or information sufficient to form a belief as to the

truth of the remaining averments contained in paragraph 6 of Plaintiff's Complaint.

7.    On or about March 19, 2006, at approximately 1:00 a.m. while in the bathroom of her hotel room, plaintiff attempted to exit the bathroom through an internal heavy hinged door.  To do so, plaintiff held onto her walker with one hand and with the other opened the bathroom door leading into the interior of her room.  As Plaintiff rolled her walker and attempted to leave the bathroom, the hinged door swung closed upon plaintiff, slamming her body hard against the floor.  In collision with the door and impact with the floor, plaintiff suffered significant bodily injuries, including a broken wrist, and required immediate emergency medical treatment.

**Answer**:    Marriott International, Inc. is without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 7 of Plaintiff's Complaint.

8.    As a proximate result of the negligence and unlawfulness of defendants and each of them, herein alleged, plaintiff sustained numerous injuries to her body all of which injuries have caused and continue to cause plaintiff great mental, physical pain and suffering.  These injuries included an open and compound fracture to the radius and ulna of the right forearm, which requires two separate surgeries and a lifetime risk of devastating and deteriorating health.  These injuries will result in permanent disabilities to plaintiff.

**Answer**:    Marriott International, Inc. denies that Plaintiff suffered any injuries as a proximate result of Marriott International, Inc.'s negligence or conduct. Further answering, as to the nature and extent of Plaintiff's injuries,

Marriott International, Inc. is without knowledge or information sufficient to form a belief as to the truth of the remaining averments.

9.    As a further and proximate result of the negligence of defendants, and each of them as herein alleged, plaintiff was required to and did employ physicians and other medical providers for medical examination, treatment and care of these injuries and did incur and continue to incur medical and incidental expenses in excess of $20,000.00.

**Answer**:    Marriott International, Inc. denies the allegations contained in paragraph 9 of Plaintiff's Complaint.

## INKEEPER DUTY TO PROTECT AGAINST DANGEROUS CONDITIONS

10.    As innkeepers, defendants owed plaintiff a special duty of care to take reasonable measures and to protect her and other guests from harm and necessary dangerous conditions.  This included an obligation to carefully inspect disability-accessible features on the premises, maintain them in good working order, repair aspects that might pose a danger, and warn guests of risks of injury.  Defendants breached that duty of care as stated herein.

**Answer**:    Marriott International, Inc. denies that Plaintiff has properly alleged the duty then and there owed by it and denies that it breached any duty then and there owed to Plaintiff.

11.    At the time of plaintiff's fall, the heavy door on the bathroom at defendant's hotel were dangerous, unsafe and presented an unnecessary and unacceptable risk to hotel guests, especially those who are disabled and request special amenities in connection with their disabilities.  In particular, the heavy hinged door at the time of plaintiff's fall had an automatic door-closing device (either spring or pneumatic) which was set to close the door without delay, ,

well before the elderly and disabled guest was able to clear the threshold.  It is expected and foreseeable that elderly and disabled guests would be injured by the heavy hinged door closing automatically upon them, and it was therefore negligence and a breach of duty for the hotel to have such devices and fail to replace them prior to plaintiff's injury.

**Answer**:   Marriott International, Inc. denies the allegations contained in paragraph 11 of Plaintiff's Complaint.

12.   Defendants also failed to warn plaintiff or other guests of the risks of injuries by the heavy hinged door.  On information and belief, defendants failed to conduct reasonable efforts at inspections, maintenance, repair, and safety checks consistent with their innkeeper obligations.

**Answer**:   Marriott International, Inc. denies the allegations contained in paragraph 12 of Plaintiff's Complaint.

13.   The dangerous condition of the bathroom door and defendant's negligence as set forth herein, were the proximate causes of plaintiff's fall and related injuries, and the types of injuries she sustained as a result are exactly those that are most likely foreseeable from the dangerous condition and negligence of defendants.

**Answer**:   Marriott International, Inc. denies the allegations contained in paragraph 13 of Plaintiff's Complaint.

14.   On information and belief, Defendants and/or hotel employees has actual and constructive notice of the dangerous condition prior to Plaintiff's injury.

**Answer**:   Marriott International, Inc. denies the allegations contained in paragraph 14 of Plaintiff's Complaint.

WHEREFORE, Defendant, **MARRIOTT INTERNATIONAL, INC.**, denies that Plaintiff, **MARJORIE FRIEDMAN SCHERR,** is entitled to judgment against it in the sum sought or in any sum whatsoever, and further prays that judgment and costs be entered in favor of the Defendant and against the Plaintiff.

## AFFIRMATIVE DEFENSE

**NOW COMES** Defendant, **MARRIOTT INTERNATIONAL, INC.**, by and through one of its attorneys, ROBERT M. BURKE of JOHNSON & BELL, LTD., and in the alternative to and in addition to its Answer to Plaintiff's Complaint, states that the Plaintiff, **MARJORIE FRIEDMAN SCHERR**, was careless and negligent in one or more or all of the following respects, which proximately caused the injuries and damages of which she complains:

A.      Carelessly and negligently failed to maintain a proper lookout for her own safety;

B.      Was otherwise careless and negligent.

WHEREFORE, Defendant, **MARRIOTT INTERNATIONAL, INC.**, prays for judgment and costs of suit in the event that Plaintiff is found to be more than fifty (50%) percent at fault for causing her own injuries and damages, or in the alternative, prays for a reduction of any damages awarded to the Plaintiff in proportion to the percentage of the Plaintiff's own contributory fault.

Respectfully submitted,

JOHNSON & BELL, LTD.


By:    /s/Robert M. Burke_____
       Robert M. Burke, one of the
       Attorneys for Marriott  International, Inc.


7

ROBERT M. BURKE
JOHNSON & BELL, LTD.
Attorney for Defendants
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603
Telephone:  (312) 372-0770
Attorney No.: 06347

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **MARJORIE FRIEDMAN SCHERR,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Case No. 08 C 2098 |
| ) | |
| **MARRIOTT INTERNATIONAL, INC.,** ) | Judge: Matthew F. Kennelly |
| and **DOES 1 through 10,** inclusive ) | |
| ) | Magistrate: Michael T. Mason |
| Defendant. ) | |

### AFFIDAVIT

**NOW COMES** the Affiant, **PAUL GAMBOA,** who state that if called to testify herein, he could competently testify to the following based upon his personal knowledge:

1.     I am an attorney of record for Defendant Marriott International, Inc.

2.     As part of my initial investigation and preparation of the defense of this matter, I have attempted to identify and locate several occurrence witnesses who were former employees of the Hotel where the complained-of incident took place.

3.     To that end, I have discussed the identification of said former employees at length with the current General Manager of the involved Hotel, Jeff Miles. Mr. Miles was able to provide me those last known addresses in his possession of said former employees.

4.     I have personally performed online database searches of said former employees in an attempt to identify their current respective whereabouts.

5.    In addition, I have contacted an investigation firm to provide me with said former employees' most recent known addresses, using the information provided to me by Mr. Miles.

6.    The last known addresses of Chrystal Smith, Daniel Schoch, and Sally Crowther, as represented in Defendant's Motion to Transfer Venue, are the results of my investigative efforts.

7.    Further affiant sayeth not.

_____
Paul Gamboa

**SUBSCRIBED** and **SWORN** to

Before me this 11th day of

June, 2008.

_____
Notary Public

"OFFICIAL SEAL"
LOUISE FREITAG
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-19-11

2

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|
| **KANSAS** | | 2007 | 2006 | 2005 | 2004 | 2003 | 2002 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | 2,293 | 2,300 | 2,364 | 2,481 | 2,522 | 2,294 | U.S. | Circuit |
| | Terminations | 2,197 | 2,426 | 2,470 | 2,608 | 2,317 | 2,288 | | |
| | Pending | 1,983 | 1,896 | 2,041 | 2,155 | 2,286 | 2,101 | | |
| | % Change in Total Filings — Over Last Year | -.3 | | | | | | 40 | 3 |
| | % Change in Total Filings — Over Earlier Years | | -3.0 | -7.6 | -9.1 | -.1 | | 38 | 4 |
| | Number of Judgeships | 6 | 6 | 6 | 6 | 6 | 6 | | |
| | Vacant Judgeship Months** | .0 | .0 | .0 | .0 | .0 | 2.4 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 383 | 384 | 394 | 414 | 421 | 383 | 61 | 5 |
| | FILINGS — Civil | 259 | 250 | 283 | 291 | 316 | 293 | 59 | 3 |
| | FILINGS — Criminal Felony | 94 | 104 | 88 | 106 | 88 | 76 | 26 | 3 |
| | FILINGS — Supervised Release Hearings** | 30 | 30 | 23 | 17 | 17 | 14 | 29 | 3 |
| | Pending Cases | 331 | 316 | 340 | 359 | 381 | 350 | 60 | 4 |
| | Weighted Filings** | 415 | 402 | 412 | 463 | 444 | 400 | 50 | 4 |
| | Terminations | 366 | 404 | 412 | 435 | 386 | 381 | 65 | 5 |
| | Trials Completed | 28 | 33 | 37 | 41 | 33 | 29 | 18 | 1 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 8.0 | 8.3 | 8.4 | 7.5 | 7.6 | 8.2 | 39 | 7 |
| | From Filing to Disposition — Civil** | 8.6 | 9.5 | 9.7 | 9.0 | 9.9 | 9.1 | 40 | 3 |
| | From Filing to Trial** (Civil Only) | 23.0 | 21.0 | 24.4 | 22.7 | 21.0 | 21.0 | 36 | 5 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 134 | 125 | 104 | 48 | 52 | 50 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 9.3 | 9.0 | 6.7 | 2.9 | 2.8 | 2.8 | 80 | 7 |
| | Average Number of Felony Defendants Filed Per Case | 1.5 | 1.4 | 1.3 | 1.4 | 1.4 | 1.3 | | |
| | Jurors — Avg. Present for Jury Selection | 41.12 | 47.41 | 41.17 | 35.42 | 39.87 | 36.85 | | |
| | Jurors — Percent Not Selected or Challenged | 43.1 | 40.9 | 40.5 | 35.3 | 41.7 | 37.4 | | |

| 2007 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 1551 | 139 | 30 | 400 | 29 | 39 | 91 | 197 | 149 | 40 | 302 | 8 | 127 |
| Criminal* | 562 | 21 | 148 | 65 | 158 | 77 | 16 | 26 | 7 | 8 | 16 | 7 | 13 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| ILLINOIS NORTHERN | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|
| | | 2007 | 2006 | 2005 | 2004 | 2003 | 2002 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | 8,422 | 8,093 | 9,056 | 10,584 | 11,126 | 11,135 | | |
| | Terminations | 7,929 | 8,255 | 8,805 | 11,461 | 10,888 | 10,709 | | |
| | Pending | 8,091 | 7,711 | 7,914 | 7,706 | 8,699 | 8,587 | | |
| | % Change in Total Filings — Over Last Year | | 4.1 | | | | | 27 | 2 |
| | % Change in Total Filings — Over Earlier Years | | | -7.0 | -20.4 | -24.3 | -24.4 | 81 | 6 |
| Number of Judgeships | | 22 | 22 | 22 | 22 | 22 | 22 | | |
| Vacant Judgeship Months** | | 15.8 | 5.7 | 12.0 | 9.6 | 22.1 | 17.8 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 382 | 367 | 412 | 481 | 505 | 506 | 62 | 4 |
| | FILINGS — Civil | 346 | 330 | 369 | 437 | 461 | 459 | 36 | 3 |
| | FILINGS — Criminal Felony | 24 | 26 | 34 | 32 | 38 | 39 | 93 | 7 |
| | FILINGS — Supervised Release Hearings** | 12 | 11 | 9 | 12 | 6 | 8 | 77 | 6 |
| | Pending Cases | 368 | 351 | 360 | 350 | 395 | 390 | 48 | 3 |
| | Weighted Filings** | 462 | 443 | 485 | 512 | 526 | 525 | 39 | 3 |
| | Terminations | 360 | 375 | 400 | 521 | 495 | 487 | 66 | 5 |
| | Trials Completed | 11 | 11 | 13 | 12 | 12 | 14 | 86 | 6 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 14.7 | 13.9 | 12.9 | 10.3 | 9.9 | 10.3 | 90 | 7 |
| | From Filing to Disposition — Civil** | 6.2 | 6.5 | 6.9 | 5.9 | 5.5 | 5.5 | 7 | 2 |
| | From Filing to Trial** (Civil Only) | 29.7 | 26.4 | 27.0 | 28.4 | 26.0 | 26.0 | 65 | 5 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 456 | 500 | 388 | 337 | 442 | 461 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 6.5 | 7.4 | 5.6 | 5.0 | 5.6 | 6.0 | 65 | 6 |
| | Average Number of Felony Defendants Filed Per Case | 1.7 | 1.8 | 1.9 | 1.9 | 1.7 | 1.7 | | |
| | Jurors — Avg. Present for Jury Selection | 45.20 | 45.07 | 51.46 | 39.36 | 45.57 | 43.63 | | |
| | Jurors — Percent Not Selected or Challenged | 31.8 | 30.9 | 36.9 | 31.0 | 37.3 | 34.8 | | |

| 2007 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 7620 | 118 | 150 | 701 | 53 | 55 | 1504 | 902 | 563 | 428 | 1614 | 23 | 1509 |
| Criminal* | 527 | 1 | 152 | 59 | 43 | 107 | 80 | 13 | 6 | 17 | 11 | 11 | 27 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."