# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTHERN ILLINOIS
### EASTERN DIVISION

MARJORIE FRIEDMAN SCHERR,　)　Case No. 08 C 2098
　　　　　　　　　　　　　　　)
　　　　Plaintiff　　　　　　)
　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　)
MARRIOTT INTERNATIONAL, INC.,)
and DOES 1 through 10, inclusive　)
　　　　　　　　　　　　　　　)
　　　　Defendants　　　　　　)
_____ )

## PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO TRANSFER VENUE

This is an action for personal injuries arising out of an incident that occurred at the Marriott Courtyard hotel in Overland Park, Kansas, on March 19, 2006.  Despite specially reserving a handicapped-accessible room at the first rate nationwide hotel,  plaintiff was knocked to the floor of her hotel bedroom at 1:00 a.m. by a self-closing heavy hinged door leading to the bathroom.   The impact broke her wrist and injured her hip, resulting in permanent damage.  Since the incident, plaintiff has undergone two surgeries and substantial and varied medical care.  Plaintiff claims that the door presented a dangerous condition in violation of Marriott's common law duties as an innkeeper.

Defendant Marriott now moves pursuant to 28 U.S.C. §1404(a) to transfer this case to the District of Kansas.   Because practically every factor under the law weighs heavily against transfer in this case, defendant's motion should be denied.  Ms. Scherr is a 78-year old woman living in Park Forest, Illinois, who suffers from a genetic neuro-degenerative disease, and, since the incident, is wheelchair-bound.   To her it would be a tremendous inconvenience – perhaps prohibitively so – to transfer this case to Kansas.  Plaintiff chose to file suit in her home District, and her action has a real and meaningful connection to this venue.  Almost all of the material witnesses in this case reside in this District, including a half-dozen medical care providers, as well as other friends and colleagues who will testify on the extent of injuries.  Defendant does not reside in Kansas, and it has failed to identify material non-party witnesses who do.  Ms. Scherr's choice of forum should not be denied.

# SUMMARY OF THE FACTS

Since childhood, plaintiff Marjorie Friedman Scherr has suffered from Charcot-Marie–Tooth, a genetic disorder that causes degeneration of nervous tissue, limiting her mobility and strength. She has lived in Park Forest, Illinois, in this District, for 52 years (Pl's Decl. at ¶2). She was physically present in this District when she telephoned defendant Marriott to specially reserve a handicapped-accessible hotel room for a trip to visit her relatives in Overland Park, Kansas (*id*. at ¶3).

At 1:00 a.m. on the morning of March 19, 2006, while in her room at the Marriott Courtyard hotel, plaintiff was knocked hard to the ground by a heavy self-closing door to the bathroom (*id*. at ¶5). As alleged in the complaint, the impact resulted in an open and compound fracture to the radius and ulna of the right forearm (Def.'s Exh. A, at ¶8).

There were only two eye-witnesses to the incident: plaintiff and her 87-year old husband. Both live in this District. Two other individuals – plaintiff's sister and her care-giver – were soon on the scene. Both of them live in Texas (Pl.'s Decl. at ¶5).

Plaintiff was taken by ambulance to a hospital in Overland Park, Kansas, and the following day, a Kansas physician operated on her broken wrist. Plaintiff spent the following week in the Kansas Hospital, and stayed two additional weeks at a Rehabilitation Center in Overland Park. Ms. Scherr did not receive any follow up care from the Kansas surgeon and does not intend to call him as a witness in her case. *See* Pl.'s Decl. at ¶5.

Plaintiff returned to her home in this District on April 8, when one of her son's – who also lives in this District and is not one of her attorneys – flew to Kansas to assist her. A few days later she underwent another surgery on her wrist at Loyola University Health Center, a medical facility within this District. Plaintiff identifies two physicians at Loyola – Dr. Bednar, who operated on her wrist, and Dr. Hopkinson, who assessed her hip injury – who are expected to testify at trial (Pl.'s Decl. at ¶6). Ms. Scherr also identifies three Illinois agencies that provided he with care-giver or therapy services (*id*. ¶7), another seven doctors or institutions in this District from whom she received medical care before and/or after the incident (*id*. ¶8), and eight others living here who might testify to damages (*id*. ¶¶9 & 10).

1   Plaintiff suffered and continues to suffer great debilitation of her physical condition

2   due to her injury.  A Commissioner on the Cook County Human Rights Commission for

3   more than 15 years, since March 2006 Ms. Scherr has been unable to attend meetings in

4   person.  After her impact with the door and floor, she has become wheelchair-bound 80% of

5   the time that she is mobile.  She can no longer walk any significant distances or stand for

6   extended periods of time, and she rarely flies in airplanes.  The District of Kansas is over

7   500 miles away from her residence and 8 hours of travel by car.  Once in Kansas, plaintiff

8   would require the hotel accommodations and care-giver services that are currently available

9   in her home District.  As she testifies: "It would be extremely inconvenient, if not

10  prohibitively difficult, to pursue this case in Kansas" (*id*. at 4).

11  **LEGAL STANDARDS**

12  It is undisputed that venue is proper in both this District and the District of Kansas,

13  and so the only questions under §1404(a) is whether transfer "would serve the convenience

14  of the parties and the witnesses and would be in the interest of justice."  *Millennium*

15  *Products v. Gravity Boarding Co.*, 127 F. Supp.2d 974, 980 (N.D. IL 2000).  Marriott

16  International Inc. is the party seeking transfer, and it is defendant's burden to demonstrate

17  that litigation of this case in the district court in the District of Kansas is "clearly more

18  convenient."  *Id*. (citing *Coffey v. Van Dorn Iron Works*, 796 F.2dd 217, 219-20 (7th Cir.

19  1986)).  Transfer is inappropriate if all it would do is shift the burden of inconvenience from

20  one party to the other.  *SEC v. Kasirer*, 2005 U.S. Dist. LEXIS 6494 (N.D. IL 2005) (citing

21  *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)).

22  "In evaluating the convenience of the parties and witnesses, the Court considers: (1)

23  the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access

24  to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the

25  parties of litigating in the respective forums."  *Millennium Products*, 127 F. Supp.2d at 980.

26  **ARGUMENT**

27  Each of the convenience factors and the interests of justice either weighs heavily in

28  favor of staying in this District, or is a wash.  On balance, the motion should be denied.

I.    **Plaintiff's Choice of Her Home Forum Is Entitled to Significant Deference**

"Court's normally defer to the plaintiff's choice of forum." *Doe v. Board of Trustees*, 2006 U.S. Dist. LEXIS 7381 (N.D. IL 2006) (citing *Federal Deposit Insurance Co. v. Citizens Bank & Trust*, 42 F.2d 364, 368 (7th Cir. 1979)).  Here, Ms. Scherr's choice of the Northern District of Illinois is entitled to substantial weight, because it is her home district (and has been for 52 years) and because it was in this District that plaintiff made her reservations with defendant and where almost all of the manifestations of her injuries took place.  *See Millennium Products*, 127 F. Supp. 2d at 980.

Although Marriott acknowledges that this District is plaintiff's home district and that venue is proper here, it argues that Ms. Scherr's choice of forum is entitled to less deference because Illinois allegedly "lacks significant contact with her cause of action" (Def.'s Mot. at 5).  Defendant overlooks, however, that the rule of diminished deference is one that applies when the plaintiff does not reside in the forum District.  *See, e.g.*, *Doe v. Board of Trustees* (plaintiff lived in San Diego, California, and neither the Chicago nor the Champaign-Urbana areas); *S.C. Johnson & Sons v. Buzz Off Insect Shield*, 2005 U.S. Dist. LEXIS 15690 (N.D. IL 2005) (plaintiff did not reside in this district); *Reyes v. Experian Information Solutions, Inc.* 2003 U.S. Dist. LEXIS 17678 (N.D. IL 2003) ("Reyes' sole connection to Illinois with respect to this case is the location of his counsel").

More importantly, diminished deference should come into play only when the forum state lacks *any* significant relationship with the underlying dispute, and here, many of the material related to the litigation occurred and are still occurring in Illinois.  This state certainly has an interest affording protections to a resident who makes travel arrangements and reservations from her home with interstate businesses.  It was here in this District that plaintiff commenced the innkeeper relationship with Marriott, which is based in Bethesda, Maryland.  And while the incident took place in Kansas, Ms. Scherr underwent surgery on her wrist and obtained medical treatment from numerous physicians in this District as a consequence of her injury.  Some events occurred in Kansas, but many significant points of contact with events relevant to this case occurred here in plaintiff's home district.

**II.      Sites of Material Events Include Illinois, Maryland and Kansas**

In considering the situs of material events under §1404(a), courts look not only to the location of the injury, but also to the locations where the parties took relevant actions and where the injuries themselves are manifested. *See, e.g.*, *Reyes*, *supra*, at *5 ("Reyes lives in Arizona, and the odds are overwhelming that any repercussions he endured happened there. Any witnesses and evidence concerning his claimed damages are thus likely to be in Arizona; there is no indication that there are any witnesses or evidence in Illinois"). Considering all of the events and information material to Ms. Scherr's claim, it is clear that they are contained at sites within this District, as well as Kansas and Maryland.

Material issues in this case include the following: (1) whether the parties formed an Innkeeper/Guest common law relationship, (2) whether  the hinged door in plaintiff's hotel room was a dangerous condition, including compliance with standards set by Marriott, (3) whether Marriott or its managing agents knew of prior injuries caused by hinged doors in handicapped rooms at its hotels, (4) whether plaintiff's medical care was reasonably incurred and was necessary as a result of the incident, and (5) to what extent plaintiff's injuries from the incident can be distinguished from her physical condition caused by her Charcot-Marie-Tooth Syndrome.  As sites for material events, Illinois looms large, along with Maryland and, plaintiff argues to a lesser extent, Kansas.

Creation of the common law relationship occurred when plaintiff was in Illinois and defendant was in Bethesda, even though the location of the hotel where plaintiff was going to stay was Kansas.  The condition of the hinged door itself occurred in Kansas, but whether it met corporate standards, or even safety standards, is an inquiry that is hardly limited to Overland Park, Kansas.  Indeed, although Marriott has submitted evidence and identified people who it claims might be material witnesses (Def.'s Mot. at 7), it has not identified any individual who installed the hinged door, who monitored that installation for corporate purposes, or who propounded the specifications for the hinge.   Certainly, the corporate agents with knowledge of prior injuries at Marriott hotels would not likely reside in Kansas. It is more likely they are at sites in Bethesda, Maryland.

1    In contrast, almost all of the relevant medical events have occurred in Illinois.

2  Although plaintiff underwent initial surgery in Overland Park, and stayed two weeks at a

3  rehabilitation center, she underwent renewed surgery to the wrist days later upon her return

4  to Illinois, and has continued to receive extensive medical treatment fromthe two Loyola

5  University doctors and more than a half-dozen medical institutions in this District.  More

6  importantly, it was in Illinois that plaintiff manifested her life-changing injuries.  The "odds

7  are overwhelming that any repercussions" Ms. Scherr endured, happened here, and "any

8  witnesses and evidence concerning [her] claimed damages are thus likely to be in" Illinois.

9  *See Reyes*, *supra*, at *5.  A balance of the relevant sites tips towards plaintiff's chosen forum,

10  or at most is a wash vis-a-vis Illinois and Kansas.

11  **III.    Plaintiff has Better, or at Least the Same, Access to Sources of Proof in Illinois**

12    As with the discussion of situs, plaintiff's access to sources of proof are just as good,

13  if not significantly better, in Illinois than in Kansas.  With respect to sources of proof, the

14  focus should be on testimony of live witnesses.  "The location of a party's documents and

15  records is 'usually not a very persuasive reason to transfer a case.'" *S.C. Johnson & Sons*,

16  *supra*, at *8 (citation omitted).  In this case, the locations of witnesses for most if not all of

17  the material issues at play in this case are in Illinois and Maryland, not in Kansas.

18    On the formation of the innkeeper relationship, the witnesses (plaintiff and Marriott

19  representatives) are in Maryland and Illinois.  On dangerous condition of the door hinge, as

20  well as its compliance with Marriott's corporate standards and defendant's prior knowledge

21  of injuries caused to hotel guests, the witnesses will most likely include corporate agents and

22  employees in Maryland and experts that can be retained in any District.  Marriott identifies

23  four employees or former employees who it asserts may have knowledge of relevant

24  information (Def.'s Mot. at 7), but it does not claim that these individuals have knowledge of

25  the condition of the door hinge.  Nor does Marriott explain what policies and procedures at

26  the local Kansas hotel are relevant to this litigation, or what issues of proof exist to which the

27  identified employees would testify.  Such "vague and unsupported assertion" of materiality

28  are insufficient to warrant transfer.  *Millennium Products*, 127 F. Supp.2d at 980.

On plaintiff's medical damages, the balance of access to sources of proof are overwhelmingly in favor of remaining in Illinois. Only one physician resides in Kansas – a surgeon who performed an emergency operation and who plaintiff does not intend to call as a witness at trial. In contrast, all of plaintiff's ongoing treating physicians and health care or care-giver providers – most of whom have direct knowledge of plaintiff's physical condition both before and after the incident at the hotel – are subject to this Court's subpoena power, and not in the District of Kansas. In addition, her colleagues on the Cook County Human Rights Commission and her friends and many of her family members who are sources of proof for plaintiff's damages live in Illinois. Any attempt to prove her damages in a district court in Kansas would be unduly burdened and prohibitively expensive.

## IV.    Convenience of the Witnesses Weighs Heavily in Favor of Illinois, Not Kansas

"The convenience of witnesses is often the most important factor in deciding whether to grant a motion to transfer." *S.C. Johnson & Sons*, *supra*, at *8 (citation omitted).

> In determining whether a particular venue is more convenient for the witnesses, a court must consider the number of witnesses in each forum; the nature, quality, and importance of the witnesses' testimony with respect to the issues of the case; the expense of transportation and the length of time the witnesses will be absent from their jobs; and whether the witnesses can be compelled to testify. However, the convenience of witnesses who are employees of a party to the case is generally assigned little weight, as it is assumed the party will ensure their appearance at trial. [*Id.* at *8-*9 (citations omitted).]

In this case, it is clear that this "most important factor" weighs decidedly towards Illinois, as practically all of the non-party witnesses with material information live here.

In the first instance, Marriott does not explain with more than vague and unsupported assertions how the employees it identifies have information relevant to this litigation. It asserts only (Def.'s Mot. at 10) that its Kansas employees have knowledge of the occurrence, the premises generally, the complained-of room specifically and the relevant policies and procedures at the hotel. Front desk associates Chrystal Smith and David Schoch worked the night of the incident and were contacted afterwards, but there is no evidence or even assertion that they had any knowledge about the condition of the door hinge or witnessed the incident. Ms. Smith at any rate is a hotel employee, and thus the significance of her inconvenience to travel is lessened. And Mr. Schoch lives in Hawaii.

1    Similarly, Marriott identifies Kansas managers Sally Crawther and Jeff Miles, but

2    fails to establish they possess material information necessary for its defense.  Nor does

3    Marriott identify relevant "policies and procedures" to which these witnesses would testify,

4    or how they might factor into material issues.  Certainly, the local managers would not be the

5    source of proof for compliance with corporate standards for door hinges or knowledge of

6    injuries to guests at Marriott's hotels nationwide.  Moreover, as employees of defendant or

7    defendant's agents, consideration of their inconvenience under the law is lessened.

8    On the flip side, plaintiff has identified two eyewitnesses to the incident, both residing

9    in Illinois.  Ms. Scherr's sister and another were near eyewitnesses, but they reside in Texas,

10    not Kansas. Some of plaintiff's family who reside in Kansas visited plaintiff in Kansas after

11    the incident, but a similar number of her family who visited her there live in Illinois.

12    At least nine separate physicians or medical institutions (Dr. Bedner and Dr. William

13    Hopkinson, at Loyola University Health Services; Dr. G. Mingolelli, of Hazelcrest; Christ

14    Advocates Hospital, in Oak Forest, Illinois; Northwestern University Hospital, in Chicago;

15    Dr. Michael Smith, at Mercado Foot and Ankle Clinic; Dr. Timothy Field, in Harvey,

16    Illinois; Dr. Purmendu Gupta, at the University of Chicago Hospitals; and Dr. Teepu

17    Siddique, at Northwestern University) have provided relevant medical treatment to plaintiff

18    after her injury at defendant's hotel, and all would have direct knowledge of plaintiff's

19    damages.  In addition, three Illinois agencies have provided home care, physical therapy and

20    hydro-therapy.  Although plaintiff's ambulance emergency responders, the doctor who

21    performed emergency services, and employees during plaintiff's short-term stay at the

22    rehabilitation center are in Kansas, plaintiff does not anticipate relying upon their live

23    testimony at trial.  By far, the vast majority of the relevant medical care providers are under

24    this Court's subpoena power, and not the district court in Kansas.

25    In addition, plaintiff lists persons at the Cook County Human Rights Commission and

26    seven friends (Marilyn Tannebaum (Olympia Fields); Otta Stock (Park Forest); Alice Racher

27    (Park Forest); Nancy Plotkin (Chicago); Dr. Wendy Baird (Chicago); Peg Donohue (Park

28    Forest); Bess Grossweiner (Glencoe) who she might call at trial.  All reside in Illinois.

1  **V.    Convenience of the Parties Weighs Heavily in Favor of Illinois, Not Kansas**

2        "In assessing the convenience of the parties, "the court should consider the parties'

3  respective residences and their ability to bear the cost of litigating in a particular forum."

4  *S.C. Johnson & Sons*, *supra*, at *10 (citation omitted).  "But it is well established that a

5  motion under §1404(a) will not be granted simply to shift the balance of inconvenience from

6  the defendant to the plaintiff."  *Millennium Products*, 127 F. Supp.2d at 980 (denying the

7  motion even though there was "no question that transfer of the case would make litigation

8  more convenient for" defendant).  In this case, transfer to the Kansas venue would not only

9  place a heavy – potentially insurmountable – burden onto Ms. Scherr, but it would add no

10  convenience for defendant, which resides in Maryland, neither Illinois nor Kansas.

11        Ms. Scherr testifies that, with her neuro-degenerative disease and the injuries she

12  sustained as a result of the hotel incident, she has extremely limited mobility and is

13  essentially confined to a wheelchair.  Unable to fly to Kansas, she and her 87-year old

14  husband would have to drive more than 500 miles and 8 hours by car for every court-ordered

15  appearance and for trial.  Once in Kansas, plaintiff would require the accommodations and

16  services she receives at her home in this District, which as the facts of this case exemplifies

17  can raise more problems then they solve.  An order requiring Ms. Scherr to so travel to

18  Kansas for the case might well result in a dismissal, and would certainly impact on the

19  considerations on how hard she might be able to pursue its resolution.

20        Indeed, it is that burden Marriott seeks to gain.  Both it and the managing agents are

21  Delaware corporations headquartered in Bethesda, Maryland.  *See* Def.'s Mot. at 1, n.1.  As

22  corporate agents and representatives will need to travel from Bethesda whether the case is

23  transferred to Kansas or remains in Illinois, there is no added convenience to Marriott by

24  granting the motion.  *See Doe v. Board of Trustees*, *supra*, at *6 (Doe resided in San Diego,

25  and was required to travel whether the case remained in Chicago or was transferred to

26  Champaign-Urbana).  Keeping the case here ensures that at least one of the parties gets to try

27  the case in a home forum.  *See S.C. Johnson & Sons*, *supra*, at *11 (transfer to North

28  Carolina would enable at least one of the parties to litigate in its home forum).

1    Moreover, Marriott in its motion conveniently ignores the relative cost of transfer and

2  the respective parties' abilities to pay.  An international corporation, Marriott had offices and

3  locations in every venue, and can easily afford to defend itself in this forum.  In contrast, Ms.

4  Scherr is a disabled individual who can no better afford to find counsel, travel and make

5  arrangements for trying this case in Kansas than she could afford her initial injury.  Marriott

6  is clearly in a better position to try this case in Illinois than Ms. Scherr would be in Kansas.

7  **VI.    Interests of Justice Weight Neutral, and Ultimately Towards Denial of the Motion**

8    Given that the balance of factors related to the convenience of the parties and

9  witnesses prescribes this case remains in Illinois, it would be improper to transfer to Kansas

10 on the basis of "interests of justice" in §1404(a) alone.  Moreover, consideration of the

11 interests of justice in this case does not indicate a change in venue.

12    Defendant cites three judicial interests for transferring to Kansas: (1) an alleged

13 shorter time to trial, (2) an alleged better familiarity with Kansas law, and (3) a stronger state

14 interest in determining premises liability.  None of these reasons is established in the record

15 or warrants transferring this case to the inconvenience of Ms. Scherr and her witnesses.

16    In the first instance, a transfer of this case is not likely to achieve a sooner trial date.

17 Although this Court considers the concern over "ensuring speedy trials" when adjudicating a

18 §1404(a) motion, that factor does not even tip in favor of Kansas.   While the median time in

19 2007 for civil cases to go to trial in Kansas is 23 months from filing (Def.'s Exh. E), and the

20 median time for cases in this District is 29.7 (Def.'s Exh. F), this Court sets its own cases

21 closer to the median time of Kansas than Illinois.  *See SEC v. Kasirer*, 2005 U.S. Dist.

22 LEXIS 6494 (N.D. IL. 2005), at *9 ("The median time to trial for cases on my own docket is

23 significantly lower than the median in this District as a whole, but not as low as the median

24 in the Central District of California" (17.8 months)); *D'Ancona & Bflaum LLC v. M2*

25 *Software*, 2001 U.S. Dist. LEXIS 11375 (N.D. IL 2001), at *7 ("the time from filing to trial

26 on this Court's own calendar is much closer to 18 months than 27").   In addition, defense

27 exhibits show a shorter time from civil filing to resolution in Illinois (6.2 months) than in

28 Kansas (8.6 months), indicating a more efficient resolution is possible here.

1    Moreover, given the delays that would ensue while Ms. Scherr attempts to find

2  Kansas attorneys and arranges for the transfer of this case, granting the motion would only

3  delay this case. Ms. Scherr is here, now, represented by attorneys licensed to practice in this

4  District and ready to engage in the Court's alternative dispute resolution processes as well as

5  discovery under the Federal Rules; a transfer would upend the balance of these interests.

6    Marriott's claim that the Kansas court can better determine the law of this case is

7  incorrect. As defendant acknowledges (Def.'s Mot. at 11, n.5), determination of applicable

8  substantive law will turn on the choice of law rules in Illinois, not Kansas. Plaintiff submits

9  that this choice of law determination is more readily made by the district court in Illinois

10  than in Kansas. Moreover, given that the Innkeeper duty arose while plaintiff was in her

11  home District, and Maryland is the state where defendant resides, it is not crystal clear that

12  Kansas law would apply here. At any rate, district courts are often asked to decide questions

13  based on another state's laws, *D'Ancona & Pflaum LLC*, *supra*, at *8-*9, and thus even if

14  Kansas law applies here this factor does not tilt significantly in either direction.

15    Finally, Marriott's claim that Kansas has a greater interest in determining premises

16  liability is not well taken. Illinois has just as much interest in assuring that special

17  relationships entered into by its residents with nation-wide commercial enterprises comply

18  with all legal requirements. That the breach occurred while plaintiff was on vacation in

19  Kansas does not diminish Illinois' interests. Indeed, given that a transfer here might well

20  result in a voluntary dismissal, it can hardly be said that the interests of justice would be

21  served by forcing Ms. Scherr and the witnesses to appear in the Kansas forum.

22                                      **CONCLUSION**

23    For the foregoing reasons, defendant's motion to transfer venue should be denied.

24                                      Respectfully submitted,

25                                      Julie Friedman Ehrlich
                                        Jeremy L. Friedman
26

27                                  By: Jeremy L. Friedman
                                        Jeremy L. Friedman
28                                      Attorneys for plaintiff

JULIE L. FRIEDMAN
The Law Offices of Julie L. Friedman
P.O. Box 1334
Highland Park, IL 60035
Telephone: (847)414-8615
jlfehrlich@yahoo.com
Attorney # 6180634

JEREMY L. FRIEDMAN
Attorney at Law
2801 Sylhowe Road
Oakland, CA 94602
Telephone: (510) 530-9060
Facsimile: (510) 530-9087
jlfried@comcast.net
Attorney # 6199791

Attorneys for plaintiff
Marjorie Friedman Scherr