**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARJORIE FRIEDMAN SCHERR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 08 C 2098** |
| | ) | |
| **MARRIOTT INTERNATIONAL, INC.;** | ) | |
| **COURTYARD MANAGEMENT** | ) | |
| **CORPORATION; COURTYARD II** | ) | |
| **ASSOCIATES, L.P.; MARRIOTT** | ) | |
| **INTERNATIONAL DESIGN AND** | ) | |
| **CONSTRUCTION SERVICES, INC.;** | ) | |
| **TRI-SOUTH CONSTRUCTION, INC.;** | ) | |
| **LEO A. DALY CO.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY,  District Judge:

Marjorie Friedman Scherr has sued Marriott International, Inc. (Marriott International), Courtyard Management Corporation (Courtyard Management), Courtyard II Associates, L.P. (Courtyard II), Marriott International Design and Construction Services, Inc. (MIDCS), and Tri-South Construction, Inc. (Tri-South), claiming they negligently caused personal injuries she suffered while staying as a guest at a Marriott Courtyard hotel in Overland Park, Kansas.[1]  Scherr now moves for partial summary judgment and reconsideration of the Court's prior order denying leave to file a fourth

---

[1] Scherr settled with two other defendants, Duranotic Door, Inc. and Duranotic Door Installation.

amended complaint.  The defendants move for summary judgment.  For the reasons

below, the Court denies the motions.

## Background

The Court takes the following facts from the allegations in Scherr's third

amended complaint.  On March 17, 2006, Scherr, who at the time was seventy-six

years old, checked into the Marriott Courtyard hotel in Overland Park, Kansas while on

a family trip to the area.  Because she was able to walk only with a walker, she reserved

a room at the hotel set aside for disabled guests.  On March 19, 2006 at approximately

1:00 a.m., Scherr attempted to leave the bathroom in her room while using her walker.

She exited the bathroom through a spring-hinged door.  As she rolled her walker and

tried to exit, the door closed quickly, striking her and causing her to fall to the floor.  As

a result of the fall, she broke her right wrist and was required to go to the hospital,

where she underwent surgery.  The impact also injured her right hip, "causing her to

lose what little mobility she [had] left."  3rd Am. Compl. ¶ 14.

Scherr filed this suit in Illinois state court on March 17, 2008, initially naming

Marriott International as the only defendant.  Marriott International removed the case to

this Court based on diversity of citizenship.  Scherr learned on June 15, 2008 (via

another motion in this case) that Courtyard Management was the entity that managed

the hotel.  In late January 2009, Scherr learned that the door appeared to have been

installed as part of an overall "reinvention" of the hotel and that the general contractor

was Tri-South Construction.  On February 17, 2009, she filed an amended complaint,

naming Courtyard Management and Tri-South as additional defendants.

Scherr later learned of the involvement of other entities in the design or

installation of the door.  On June 10, 2009, she filed a second amended complaint, adding Daly and Duranotic Door, Inc. as defendants.  Scherr filed her third amended complaint on July 24, 2009, adding MIDCS, Courtyard II, and Duranotic Door Installation as defendants.  On July 26, 2010, Scherr moved for leave to file a fourth amended complaint, in which she proposed to add a claim under the Americans with Disabilities Act (ADA).  The Court denied the motion [docket no. 303].

Scherr alleges that Marriott International owns the hotel; Courtyard Management and Courtyard II, both wholly owned Marriott International subsidiaries, operate it; MIDCS helped plan the renovation project that included installation of the door in question; Tri-South served as general contractor for the project; and Daly prepared the designs and plans for the disability-accessible rooms.

Scherr asserts negligence claims against all the defendants.  Among other things, she alleges that the spring-hinged bathroom door was unsafe in that its automatic closing device was set to close too quickly and with too much force and that the defendants failed to exercise reasonable care in designing, installing, calibrating, inspecting, and servicing the door.

## Discussion

### A.    Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  On a motion for summary

judgment, the Court draws all reasonable inferences in favor of the non-moving party. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "On cross-motions for summary judgment, the court evaluates each party's motion separately and on its own merits, resolving factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration." *Patrick Schaumburg Autos., Inc. v. Hanover Ins. Co.*, 452 F. Supp. 2d 857, 866 (N.D. Ill. 2006) (citations omitted). The Court's "function is not to weigh the evidence but merely to determine if there is a genuine issue for trial." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

**B.      Choice of Law**

As a preliminary matter, the parties disagree over whether the Court should apply Illinois or Kansas substantive law. A district court sitting in diversity applies the choice of law rules of the state in which it sits. *Malone v. Corrs. Corp. of Am.*, 553 F.3d 540, 543 (7th Cir. 2009). Illinois courts apply a "most significant contacts" test to resolve conflicts of law. *Miller v. Long-Airdox* Co., 914 F.2d 976, 978 (7th Cir. 1990). If the conflict involves tort law, Illinois courts apply the substantive law of the state with "the most significant relationship to the occurrence and the parties." *Jones v. State Farm Mut. Auto. Ins. Co.*, 289 Ill. App. 3d 903, 917, 682 N.E.2d 238, 248 (1997). This standard requires consideration of the place where the injury occurred, the place where

4

the conduct causing the injury occurred, the domicile or residence of the parties, and the place where the parties' relationship is centered. *Id.*

Illinois law "presumes that the law of the state where the injury occurred will govern unless another state has a more significant relationship to the occurrence or to the parties involved." *Miller*, 914 F.2d at 978 (citation and internal quotation marks omitted). The presumption is particularly "difficult to overcome where the conduct causing the injury occurred in the same state where the injury occurred." *Id.* (citing Restatement (Second) of Conflicts of Laws § 145 cmt. e at 420); *see also id.* (recognizing that "the two most important contacts are the place where the injury occurred and the place where the conduct causing the injury occurred").

In *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842 (7th Cir. 1999), the Seventh Circuit applied Illinois conflict of law principles to hold that Mexican substantive law governed the tort claim of a plaintiff injured at a Mexican hotel. *Id.* at 844-45. The plaintiff objected, noting that he resided in Illinois; he had responded to a promotion for the hotel in Illinois; he had reserved the hotel in Illinois; and the defendants maintained their principal places of business outside of Mexico. The court concluded that Mexico had the most significant relationship to the incident and parties, reasoning that "in the absence of unusual circumstances, the highest scorer on the 'most significant relationship' test is – the place where the tort occurred." *Id.* at 844 (citations omitted).

The governing factors point to application of Kansas substantive law in this case. Both the injury and the alleged cause of the injury – installation and maintenance of the spring hinge – occurred in Kansas, raising a presumption that Kansas law applies.

5

Scherr counters that she resides in Illinois; reserved the hotel room while in Illinois; owns insurance in Illinois; and received medical treatment in Illinois. These contacts, however, do not constitute the "unusual circumstances" required to overcome the presumption. *See Spinozzi*, 174 F.3d at 844-45. Likewise, the location of the defendants' principal place of business outside of Kansas does not overcome the presumption. *See id.*

Moreover, Scherr has forfeited any claim that any other state's substantive law applies. "The failure to develop an argument constitutes a waiver." *Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) (citing *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004)); *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) (noting that it is not the duty of the courts to construct parties' legal arguments for them). Scherr's response brief does not address the defendants' argument that Kansas law applies. Her sole discussion of the issue appears in her own motion for partial summary judgment, in which she argues briefly that the Court need not address choice of law issues.

## C. Scherr's Motion for Partial Summary Judgment

To prevail on a negligence claim under Kansas law, Scherr must prove "the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and injury suffered." *South v. McCarter*, 280 Kan. 85, 94, 119 P.3d 1, 8 (2005). Scherr seeks partial summary judgment on the grounds that: (1) the bathroom door in her hotel room failed to comply with ADA regulations as a matter of law; (2) Marriott International, Courtyard Management, Courtyard II, and MIDCS owed her a

6

non-delegable duty of care as innkeepers; and (3) she was not contributorily negligent.[2]

In response, the defendants assert a number of substantive and procedural arguments.

The Court begins with Scherr's contention that the spring hinge on her hotel bathroom door failed to comply as a matter of law with the Americans with Disabilities Act Accessibility Guidelines (ADAAGs), 28 C.F.R. § Part 36, Appendix A.

Scherr relies on section 9 of the ADAAGs, which sets forth requirements for accessible transient lodging and mandates that "[d]oors and doorways designed to allow passage into and within all sleeping rooms, suites or other covered units shall comply with § 4.13." ADAAG § 9.2.2(3). Subsection 4.13, in turn, provides in relevant part:

> **4.13.10** **Door Closers**. If the door has a closer, then the sweep period of the closer shall be adjusted so that from an open position of 70 degrees, the door will take <u>at least 3 seconds</u> to move to a point 3 in (75 mm) from the latch, measured to the leading edge of the door.

ADAAG § 4.13.10 (emphasis added). The appendix to the ADAAGs further states:

> **A4.13.10** **Door Closers**. Closers with delayed action features give a person more time to maneuver through doorways. They are particularly useful on frequently used interior doors such as entrances toilet rooms.

---

[2] The Court notes that Scherr seeks adjudication of factual or legal matters relating to a portion of a single claim. "Summary judgment may not be entered 'for a portion of a single claim in suit.'" *Patrick Schaumburg Autos., Inc.*, 452 F. Supp. 2d at 866 (quoting *Commonwealth Ins. Co. of N.Y. v. O. Henry Tent & Awning Co.*, 266 F.2d 200, 201 (7th Cir. 1959)); *see also Capitol Records, Inc. v. Progress Record Distrib., Inc.*, 106 F.R.D. 25, 28-29 (N.D. Ill. 1985). Pursuant to Rule 56(d), however, the Court has the discretion to enter an order narrowing for trial either factual issues or "certain legal issues, including causation and liability." *Patrick Schaumburg Autos., Inc.*, 452 F. Supp. 2d at 866 (citing *Occidental Fire & Cas. Co. of N.C. v. Cont'l Bank N.A.*, 918 F.2d 1312, 1320 (7th Cir. 1990); *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 990 F.2d 342, 345-46 (7th Cir. 1993)).

7

ADAAG § A4.13.10.  The ADAAGs do not expressly define the term "door closers" to include or exclude spring hinges.

The defendants dispute that the ADAAG provision for "door closers" covers the spring hinge in Scherr's hotel room.  The defendants rely on a notation in the ADAAGs appendix, which they argue differentiates between door closers and spring hinges.  *See* ADAAG § A4.17.15 (noting that "[t]o make it easier for wheelchair users to close toilet stall doors, doors can be provided with <u>closers,</u> <u>spring</u> <u>hinges,</u> or a pull bar mounted on the inside surface of the door near the hinge side") (emphasis added).  They contend that the spring hinge in Scherr's hotel room complied with a standard in the American National Standard for Self Closing Hinges and Pivots (ANSI).  This standard, ANSI 117.1 § 404.2.8 (1998), differentiates between door closers and spring hinges, providing:

> **404.2.8.1    Door Closers.** Door closers shall be adjusted so that from an open position of 90 degrees, the time required to move the door to an open position of 12 degrees shall be 5 seconds minimum.

> **404.2.8.2    Spring Hinges.**  Door spring hinges shall be adjusted so that from the open position of 70 degrees, the door shall move to the closed position in 1.5 seconds minimum, measured under ambient conditions.

The defendants do not, however, submit any evidence suggesting that ANSI 117.1 § 404.2.8.2 takes precedence over any applicable ADA provisions.

The parties' experts disagree over the applicability of ADAAG 4.13.10 to the spring hinge in Scherr's hotel room.  Scherr relies on the testimony of experts Wilson Hayes and Richard Gill and an admission by Marriott International and MIDCS agent Jefferson Thomas.  Hayes testified that "a spring hinge is a specific type of door closer,"

8

Hayes Decl. ¶ 13; "the bathroom door in Room 143 door [sic] does not allow sufficient time under ADA-requirements," *id.* ¶ 14; and, "[r]egardless of whether the closing speed of the spring-hinged door in Room 143 of the Marriott Courtyard met applicable standards, . . . the spring-hinged door was unsafe for use in an ADA-accessible room." Hayes Analysis Summ. at 10. Gill initially stated in his Rule 26(a)(2) report that section 4.13.10 "does not technically apply" because "the subject door was not equipped with a closer but with spring hinges," Gill Report at 5, but he later characterized that statement as "incorrect[ ]" and concluded:

> In light of all of the records in this case, including the declaration by Dr. Hayes, I do believe that the ADA standard for closers would apply to spring hinges designed and installed as door closers. From a human factors perspective, there is no reason to relax door-closing speed requirements when a spring hinge is used in place of a door closer, and to do so in an ADA-designated hotel room would undermine the purposes of the safety guidelines, standards and statutes promulgated to prevent this type of injury.

Gill Decl. ¶ 4. Finally, Thomas admitted in his deposition that spring hinges are not ADA-compliant. Thomas Dep. at 119.

The defendants rely on the testimony of defense experts Greg Wisniewski and Ronald Rapacz and the contents of the "Ingersoll-Rand memo." Wisniewski testified that closers and spring hinges are "miles and universes apart" and that the spring hinges in Scherr's hotel room were regulated by ANSI 117.1 § 404.2.8.2 alone. Wisniewski Dep. at 186, 198. Rapacz testified that there is "clearly a distinction between a door closer and spring hinge identified in ANSI" and in the architectural and engineering fields. Rapacz Dep. at 189-90.[3] The Ingersoll-Rand memo describes the

---

[3] Rapacz did not, however, state conclusively that spring hinges are not covered
(continued...)

physical differences between a spring hinge and a door closer. Ingersoll-Rand Memo at 3.

Lastly, Scherr submits a photograph of the spring hinge from her hotel room, which bears the label "Door Closer Body Listed UL." *See* Pl.'s Rule 56.1 Stmt. of Undisputed Facts, Ex. 1. The defendants counter that the label merely describes the function of the spring hinge and has no relevance in determining whether the ADAAGs apply.

The Court need not decide at this stage whether the ADAAG section 4.13.10 standard applied to the spring hinge in Scherr's hotel room. Even assuming (as Scherr argues) that the provision applies, a fact question exists regarding whether the hotel door took less than three seconds to close from an open position at 70 degrees. Although Scherr's expert, Ellen Lee, measured the closing time of the Room 143 bathroom door as 2.58 seconds, defense expert Gregory Wisniewski reported measurements between 2.8 and 3.1 seconds, and defense expert Daniel Wojonowski reported measurements as high as 3.17 seconds. Moreover, Lee admitted that she had little experience using the timing equipment at the time of the inspection and that she had not checked her equipment for calibration prior to the inspection. The Court finds that based upon this evidence, a reasonable jury could find that the door complied with section 4.13.10. Therefore, the Court declines to hold that Scherr's hotel room

---

[3](...continued)
by ADAAG § 4.13.10. When asked whether building codes impose different requirements for door closers and spring hinges, Rapacz responded: "Other than ADA, I would say, yes. ADA does not distinguish or doesn't even define a spring hinge or include it." *Id.* at 190-91.

failed to comply with ADA regulations as a matter of law.

The Court next considers Scherr's contention that Marriott International, Courtyard Management, Courtyard II, and MIDCS owed her a duty of care as innkeepers that they could not delegate to independent contractors.

Under Kansas law, an employer is generally not liable for the conduct of its independent contractors. *McCubbin v. Walker*, 256 Kan. 276, 289, 886 P.2d 790, 799-800 (1994) ("As a general rule, when a person (a contractee) lets out work to another and reserves no control over the work or workmen, the relation of contractee and independent contractor exists, and not that of master and servant, and the contractee is not liable for the negligence or improper execution of the work by the independent contractor.") (citation and internal quotation marks omitted); *see also Phillips Pipe Line Co. v. Kan. Cold Storage, Inc.*, 192 Kan. 480, 487, 389 N.E.2d 766, 771 (1964).

Scherr argues that an exception exists under section 425 of the Second Restatement of Torts, which states:

> One who employs an independent contractor to maintain in safe condition land which he holds open to the entry of the public as his place of business, or a chattel which he supplies for others to use for his business purposes or which he leases for immediate use, is subject to the same liability for physical harm caused by the contractor's negligent failure to maintain the land or chattel in reasonably safe condition, as though he had retained its maintenance in his own hands.

Restatement (Second) of Torts § 425. She also cites cases embracing the principle that an innkeeper may not delegate its duty of care to an independent contractor. *See, e.g.*, *Capitol Chevrolet Co. v. Lawrence Warehouse Co.*, 227 F.2d 169, 173 (9th Cir. 1955) ("Landlords and innkeepers are liable for injuries suffered by tenants or visitors because of unsafe conditions on the premises present as a result of the negligence of

independent contractors employed by them, their duty to maintain the premises in a safe condition being held non-delegable."); *Clayman v. Sterwood Hotels & Resorts Worldwide*, 343 F. Supp. 2d 1037, 1041-42 (D. Kan. 2004) (applying Virgin Islands law and observing that "courts around the country have held innkeepers liable for the negligence of their contractors").

The Court recognizes that under Kansas law, an innkeeper is under a duty to keep its premises in a reasonably safe condition, *Shaubell v. C.C. Bennett*, 173 Kan. 774, 777-78, 252 P.2d 927 (1953), and to protect guests against an unreasonable risk of physical harm, *Gardin v. Emporia Hotels, Inc.*, 31 Kan. App. 2d 168, 171-72, 61 P.3d 732, 736 (citing Restatement (Second) of Torts § 314A (1965)). The Court is aware of no Kansas law, however, embracing either section 425 of the Second Restatement of Torts or the principle that an innkeeper's duty to its guests cannot be delegated to an independent contractor.

The Court declines to decide at this stage whether Marriott International, Courtyard Management, Courtyard II, and MIDCS owed Scherr a non-delegable duty as innkeepers or under section 425 of the Restatement. Even under Scherr's statement of the law, genuine fact issues remain regarding whether each particular defendant qualifies as an "innkeeper" or as "[o]ne who employs an independent contractor to maintain in safe condition land which he holds open to the entry of the public as his place of business, or a chattel which he supplies for others to use for his business purposes or which he leases for immediate use."

Finally, the Court considers Scherr's contention that the defendants should be precluded from presenting at trial any affirmative defenses predicated on her

12

negligence because no direct evidence supports such a defense.

Contributory negligence is a question for the jury unless no reasonable jury could find the plaintiff contributorily negligent. *See Carder v. Grandview Twp., Ford County*, 2 Kan. App. 2d 7, 9, 573 P.2d 121, 124 (1978). In this case, the issue of contributory negligence presents a fact question for the jury, for two reasons. First, Scherr's prior uneventful use of the bathroom door for several nights raises a reasonable inference that her own negligence, rather than a defect in the door, caused the incident. Second, the defendants presented evidence that Scherr suffered from a pre-existing condition that made her prone to falling as often as once per week. Drawing reasonable inferences in favor of the defendants, the Court concludes that a reasonable jury could find Scherr contributorily negligent. The Court accordingly declines to preclude the defendants from asserting the affirmative defense of contributory liability at trial.

Because the Court denies Scherr's motion for summary judgment, it need not address the defendants' procedural challenges to the motion.

## D.    Marriott International's Motion for Summary Judgment

Marriott International seeks summary judgment on two grounds: it had no duty to protect Scherr from the accident because it did not own, operate, manage, maintain, or control the hotel property or participate in any design or construction activities related to the renovation; and Scherr failed to establish a genuine issue of material fact regarding the cause in fact of her injury.

The Court first considers whether Marriott International had a duty to protect Scherr from the hotel room injury. Marriott International contends that because it did not possess or control the hotel room in which Scherr was injured, it had no duty to

13

guard against her injury.  Marriott International also argues that to the extent Scherr asserts a claim of negligence in the design or construction of the renovation, it "had no part in the retention of" the architect, general contractor, or subcontractors of the renovation and therefore was not involved in those activities.  *See* Marriott Int'l Mot. for Summ. J. at 2, 6-7.  Finally, Marriott International asserts that, as a parent corporation, it generally had no duty to guard against the wrongs of its subsidiaries.

In support, Marriott International cites Kansas law imposing a duty of reasonable care based on premises liability upon only those defendants in possession or control of the premises where the injury occurred.  *See Jones v. Hansen*, 254 Kan. 499, 509, 867 P.2d 303, 310 (1994) (an occupier of land owes a duty of reasonable care under the circumstances to all entrants on the property who are present with the owner or occupier's consent).  Marriott International also cites Kansas law articulating the general rule that a parent corporation is not liable for the negligence of its independent subsidiaries unless the parent corporation engaged in wrongful conduct or if the conditions allowing for piercing of the corporate veil have been satisfied.  *See Agristor Leasing v. Meuli*, 634 F. Supp. 1208, 1213 (D. Kan. 1986) ("[A] parent corporation has a separate corporate existence and is treated separately from its subsidiary in the absence of circumstances justifying disregard of the corporate entity."); *see also Spires v. Hosp. Corp. of Am.*, 289 Fed. Appx. 269, 272 (10th Cir. 2008) (unpublished) (recognizing an exception when the parent corporation assumes a duty to the plaintiff through some affirmative undertaking).

In response, Scherr characterizes Marriott International as the "undisputed

14

innkeeper at the center of this case" and contends, without citations to the record, that she called the "Marriott" reservation line to reserve the room; that the name "Marriott" was posted on the hotel in which she was injured; and that Marriott International shares with its wholly owned subsidiaries the same corporate headquarters, the same in-house counsel, the same agent of service, and the same claims service. Pl.'s Opp. to Mots. for Summ. J. at 8-9. None of these observations clarifies Marriott International's specific role in the renovation project or the extent of its ownership of or control over the hotel in which Scherr was injured.

Despite these deficiencies in Scherr's arguments, the Court concludes that, even under Marriott International's statement of the applicable law, genuine issues of fact remain regarding Marriott International's duty toward Scherr. Marriott International relies on one sentence in an affidavit by Marriott International Assistant Secretary Chanel Maelia Bradden, who states that Marriott International "has never owned, operated, managed, maintained, or controlled" the hotel in which Scherr was injured. *See* Marriott Int'l's Rule 56.1 Stmt. of Material Facts at 4, ¶ 16; *id.*, Ex. O at 1. Marriott International also cites evidence indicating that it did not directly contract with either Daly or Tri-South to carry out the renovation.

Marriott International admits, however, that its employee, Jefferson Thomas, received an "ADA Analysis Summary" relating to the renovation project. *See* Marriott Int'l's Resp. to Pl.'s Stmt. of Add'l Material Facts at 16-17; Pl.'s Opp. to Mots. for Summ. J., Ex. 2, at 3-4. Moreover, in his deposition, Thomas admitted to involvement in the hotel renovation project as an agent of both of Marriott International and MIDCS. These admissions are sufficient to raise a fact question over whether Marriott

15

International exercised a degree of control or ownership over the hotel and engaged in activities related to the renovation. Accordingly, the Court declines to hold that Marriott International owed Scherr no duty of care as a matter of law.

The Court next considers Marriott International's argument that Scherr has failed to show an issue for trial regarding causation. Causation under Kansas law has two elements: causation in fact and legal causation. To establish causation in fact, "a plaintiff must . . . present[] sufficient evidence from which a jury could conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Puckett v. Mt. Carmelo Reg'l Med. Ctr.*, 290 Kan. 406, 420, 228 P.3d 1048, 1060 (2010); *see also Rhoten v. Dickson*, 290 Kan. 92, 114-15, 223 P.3d 786, 801-02 (2010). To establish legal causation, the plaintiff "must show that it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes were foreseeable." *Puckett*, 290 Kan. at 420, 228 P.3d at 1060. Marriott International challenges Scherr's satisfaction of the causation in fact requirement.

The Court finds that Scherr presented sufficient evidence to survive the summary judgment motion. Scherr testified on several occasions that the door closed upon her in a fast and forceful manner. Although she did not offer exact measurements regarding the weight of the door, the distance it opened, the time it took to close on her, or the force it exerted upon her, she repeatedly attributed her fall to the speed and force of the door. Based upon this testimony, a reasonable jury could conclude that her injury more likely than not resulted from a defect in the bathroom door.

Contrary to Marriott International's assertions, the reasoning in *Cohn v. N. Trust*

16

*Co.*, 250 Ill. App. 3d 222, 621 N.E.2d 132 (1993), does not compel a different result.[4] There, an Illinois court affirmed the entry of a directed verdict against a plaintiff injured while exiting the defendant's premises through a revolving door. *Id.* at 223, 621 N.E.2d at 133. The plaintiff characterized the movement of the revolving door as "fast" but also indicated that someone else had entered another compartment of the revolving door as she was exiting. *Id.* at 224, 621 N.E.2d at 134. The court concluded that the plaintiff failed to satisfy the causation requirement because she presented no evidence indicating that it was more probable that her injury was caused by a defect in the door than by the rotation of the door by the person who entered it as she was exiting. *Id.* at 225-26, 621 N.E.2d at 135. Here, in contrast, Scherr testified that she was injured by the speed and force with which the bathroom door closed upon her, rather than by any fault of her own or the conduct of another person. The Court concludes that Scherr has cleared the hurdle in *Cohn*.

**E.      Courtyard Management, Courtyard II, and MIDCS's Motions for Summary Judgment**

Courtyard Management, Courtyard II, and MIDCS seek summary judgment on two grounds: the claims against them are time-barred because they were not sued within two years of Scherr's injury; and they had no duty to protect Scherr from the alleged negligence of contractors Daly, Tri-South, Duranotic Door Inc., and Duranotic Door Installation.

A court may grant summary judgment based on a statute of limitations when

---

[4] The Court addresses *Cohn* because several of the defendants discussed the case at length. The Court notes, however, that *Cohn* is an Illinois case and that the defendants have cited no cases indicating that Kansas follows the same approach.

17

application of the statute does not turn on a disputed factual issue.  *See generally Kuemmerlein v. Bd. of Educ. of Madison Metro. Sch. Dist.*, 894 F.2d 257, 261 (7th Cir. 1990); *Agristor Leasing v. Saylor*, 803 F.2d 1401, 1406 (6th Cir. 1986) (finding error in a district court's failure to submit to the jury factual issues underlying application of a statute of limitations), *cited with approval in Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1374 (7th Cir. 1995).

In a previous decision in this case, the Court determined that Scherr's claims against Courtyard Management, Courtyard II, and MIDCS are time-barred only if governed by the two-year Illinois statute of limitations period for personal injury actions, 735 ILCS 5/13-202, rather than the four-year limitations period for claims arising from construction-related activities, *id.* 13-214(a).  *See Scherr v. Marriott Int'l, Inc.*, No. 08 C 2098, 2009 WL 4015541, at *3-5 (N.D. Ill. Nov. 19, 2009).[5]

"Where two statutes of limitations might apply, Illinois courts instruct that we should apply the more specific one."  *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 468 (7th Cir. 2008).  The four-year limitations period for construction-related claims is more specific than the two-year limitations period for personal injury actions.  *Hernon v. E.W. Corrigan Constr. Co.*, 149 Ill. 2d 190, 196, 595

---

[5] The Court noted that Scherr sustained her injuries in March 2006 but did not add the three additional Marriott entities to the suit until she filed her first and third amended complaints in February 2009 and July 2009.  *Scherr*, 2009 WL 4015541, at *1.  The Court rejected Scherr's contention that her amended complaints related back to the date she filed her original complaint or to any date within two years of her injury.  *Id.* at *3-4.  As a federal court sitting in diversity in Illinois, the Court determined that it was required to apply the statute of limitations that an Illinois state court would apply.  *Id.* at *3-4 (citing *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004)).  Finally, the Court determined that an Illinois state court would apply the Illinois statute of limitations in section 13-202 or 13-214(a).  *Scherr*, 2009 WL 4015541, at *4-5.

N.E.2d 561, 564 (1992) ("Section 13-214(a) . . . applies specifically to
construction-related activities.  Thus, we find that it takes precedence over the general
statute of limitations for personal injuries set out in section 13-202.").  Therefore, the
defendants are entitled to summary judgment only if they establish that no genuine fact
question remains regarding whether Scherr's claims are governed by the four-year
limitations period in section 13-214(a).

> Section 13-214(a) provides:
>
> Actions based upon tort . . . against any person for an act or omission of such
> person in the design, planning, supervision, observation or management of
> construction, or construction of an improvement to real property shall be
> commenced within 4 years. . . .

Section 13-214(a) "does not exclude persons based upon their status" but rather
applies, "on its face, [to] anyone who engages in the enumerated *activities*."  *People ex.
rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.*, 114 Ill. 2d 252, 261, 500 N.E.2d 34,
37 (1986) (emphasis in original); *see also Herriott v. Allied Signal, Inc.*, 998 F.2d 487,
490 (7th Cir. 1993).  Application of section 13-214(a) to this case requires a two-step
analysis:  whether the hotel renovation project constituted an "improvement to real
property," and whether Scherr's claim arose from the defendants' "design, planning
supervision, observation or management of construction or construction" of the
renovation project.  *See Ambrosia Land Invs., LLC v. Peabody Coal Co.*, 521 F.3d 778,
781 (7th Cir. 2008) (construing the parallel text in section 13-214(b)).

The defendants dispute satisfaction of the second requirement, contending that
they did not design, plan, supervise, observe, or manage the hotel renovation.  Scherr
counters, without citations to the record, that each of the three defendants engaged in

19

the enumerated activities. First, she says, MIDCS "contracted with Leo A. Daly, submitted prototypes with the spring hinge design, hired Tri-South Construction, oversaw the entire project and signed off on the work performed at its completion." Pl.'s Opp. to Mots. for Summ. J., at 10. Second, Scherr contends, Courtyard Management "worked hand-in-hand with Tri-South during the project." *Id.* Third, Scherr argues, "[a]s the owner of the premises, Courtyard II . . . was required to design and construct an ADA compliant hotel." *Id.* Elsewhere in her opposition brief, Scherr attributes additional actions to "Marriott" without specifying the corporate entity to which she refers. *See, e.g.*, *id.* at 6.

The Court concludes that Courtyard Marriott, Courtyard II, and MIDCS fail to demonstrate an absence of genuine issues of material fact regarding whether they engaged in the enumerated activities. A jury reasonably could infer that, as the hotel's operators, Courtyard Management and Courtyard II observed, managed, or supervised the hotel's renovation project. Indeed, the testimony of Courtyard Management employee Lorraine Katzer indicates that she was actively involved in the renovation. Katzer testified that, in her capacity as chief engineer, she participated in meetings regarding the construction project; inspected the work completed by the contractors; gave the contractors lists of items that needed to be corrected; ensured that the contractors completed their work in a timely manner; and discussed spring hinges for the project with a Tri-South employee. Katzer also acknowledged that she was kept informed about any engineering issues that arose. Likewise, Jefferson Thomas admitted to involvement in the hotel renovation project on behalf of MIDCS. Moreover, MIDCS concedes that it contracted with Daly to create architectural plans and

20

specifications for the renovation and contracted with Tri-South to perform the construction work.

Because issues of fact pertinent to application of the proper statute of limitations remain, the Court declines to dismiss as time-barred Scherr's claims against Courtyard Management, Courtyard II, and MIDCS. The Court notes, however, that to the extent Scherr asserts claims that do not arise from the defendants' design, planning supervision, observation or management of construction or construction of the renovation, those claims are, in fact, time-barred.

The Court turns next to the defendants' argument that they cannot be held liable for the alleged negligence of Daly, Tri-South, Duranotic Door, Inc., or Duranotic Door Installation. The defendants argue that employers can be held liable for the conduct of independent contractors only pursuant to the exception in section 414 of the Second Restatement of Torts, which states:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414 (emphasis added). In response, Scherr contends that an innkeeper cannot delegate to independent contractors its duties toward its guests.

The Court finds that, even under the defendants' statement of the applicable law, material fact questions remain concerning whether the three defendants retained control over any part of the work contracted to Daly, Tri-South, Duranotic Door, Inc., and Duranotic Door Installation. The defendants submit no evidence conclusively

21

demonstrating a lack of control over the work.  As described above, Lorraine Katzer and

Jefferson Thomas admitted to involvement in the hotel renovation project on behalf of

Courtyard Marriott and MIDCS.  Accordingly, the Court denies the motion for summary

judgment on this basis.

Finally, Courtyard Management, Courtyard II, and MIDCS argue that Scherr fails

to establish a genuine issue of material fact regarding the cause in fact of her injury.

The Court declines to grant summary judgment on this basis for the reasons stated

above.  *See supra* at 16-17.

### F.     Tri-South's Motion for Summary Judgment

Tri-South moves for summary judgment on three grounds:  it had no duty to

protect Scherr from the injury pursuant to the contract specifications defense; it had no

duty to protect Scherr from the injury pursuant to the "accepted work" doctrine under

Illinois law; and Scherr failed to show a genuine issue of material fact regarding whether

an alleged defect in the spring-hinged door was the cause in fact of her injuries.

The Court considers first Tri-South's argument that it lacked a duty to protect

Scherr from injury pursuant to the contract specifications defense.  Kansas law holds a

contractor liable for injury to a third person caused by negligently-performed

construction work.  *Talley v. Shelly Oil Co.*, 199 Kan. 767, 776-77, 433 P.2d 425, 432-

33 (1967); *Carlton v. B.G. Consultants, Inc.*, No. 98022, 2008 WL 2186196, at *4 (Kan.

Ct. App. May 23, 2008) (unpublished).  The contract specifications defense, however,

provides that:

> a contractor who builds in accordance with the plans and specifications provided
> by an architect or engineer and, . . . and who thereafter turns over the work

22

> product to the owner should not be held liable to third parties for personal injury allegedly caused by the structure or instrumentality unless the plans are so obviously dangerous that no competent contractor would follow them.

*Soave v. Nat'l Velour Corp.*, 863 A.2d 186, 191 (R.I. 2004). To demonstrate entitlement to the defense at the summary judgment stage, a contractor must show the absence of a genuine factual dispute over whether the contractor built in accordance with the plans or specifications of another; and those plans or specifications were not so obviously dangerous that any competent contractor would have refused to follow them.

Although Kansas has not expressly adopted the contract specifications defense for negligence actions, at least one Kansas court has recognized the defense in a products liability case. *See Johnston v. United States*, 568 F. Supp. 351, 353-55 (D. Kan. 1983). Moreover, the defense is recognized in the Second Restatement of Torts. *See* Restatement (Second) of Torts § 404 cmt. a (explaining that a contractor who simply followed the design specifications of another "is not subject to liability if the specified design or material turned out to be insufficient to make the chattel safe for use, unless it is so obviously bad that a competent contractor would realize that there was a great chance that his product would be dangerously unsafe"); *see also Carlton*, 2008 WL 2186196, at *5 (recognizing that the "contract specifications defense is consistent with both current Kansas law and the Restatement").

In this case, Tri-South has not met its burden to demonstrate an absence of genuine factual disputes concerning whether it followed plans or specifications so obviously dangerous that no competent contractor would follow them. Tri-South does not dispute that it knew that the hotel renovation project involved construction of disability-accessible hotel rooms. Scherr testified that the door closed upon her "fast"

23

with substantial force. She also presented evidence that the spring hinge violated the safety standards of ADAAG § 4.13.10. This evidence forecloses a finding that Tri-South has satisfied the requirements of the contract specifications defense as a matter of law.

Second, the Court considers Tri-South's assertion that it owes Scherr no duty pursuant to the "accepted work" doctrine under Illinois law. Tri-South does not contend, however, that Kansas recognizes the doctrine. Due to the Court's holding that Kansas substantive law governs Scherr's claims, the Court rejects Tri-South's contention that the doctrine excuses Tri-South from liability.

Third, Tri-South argues that Scherr fails to establish a genuine issue of material fact regarding the cause in fact of her injury. The Court declines to grant summary judgment on this basis for the reasons stated above. *See supra* at 16-17.

## G. Daly's Motion for Summary Judgment

Daly urges the Court to grant summary judgment for three reasons: it did not breach any duty to Scherr, as its plans and specifications for the renovation complied with the standard of care at the time regarding spring hinges; it did not proximately cause the accident because the other defendants impermissibly substituted a PPB-brand spring hinge in Scherr's hotel room in contravention of the design requirements; and Scherr presented no evidence that the spring hinge was defective on the date of the accident.

The Court first considers Daly's argument that it breached no duty to Scherr because its plans and specifications complied with the 1.5 second standard articulated in ANSI 117.1 § 404.2.8.2. The Court finds that Daly fails to satisfy its burden to

24

establish as a matter of law that section 404.2.8.2 provided the applicable standard of care at the time of the renovation. A reasonable jury could conclude based on the text of ADAAG 4.13.10 and Scherr's testimony that the door closed quickly and forcefully upon her that Daly breached its duty to her. Daly thus fails to negate the element of breach regarding the creation of its plans and specifications regardless of the extent of any oversight duties.

The Court turns next to Daly's contention that it did not serve as the proximate cause of Scherr's injury because the other defendants installed a PPB, Inc.-manufactured spring hinge in Scherr's hotel room rather than a spring hinge made by approved manufacturers McKinney, Stanley, and Hager. Daly does not identify any material difference between the spring hinges manufactured by PPB, Inc. and those produced by the approved manufacturers. Moreover, Daly admits that its plans and specifications expressly provided that "[d]oor spring hinges shall be adjusted so that from the open position of 70 degrees, the door shall move to the closed position in 1.5 seconds minimum, measured under ambient conditions," rather than imposing the more stringent three-second standard. *See* Daly's Mot. for Summ. J. at 5. Accordingly, the Court declines to grant summary judgment to Daly on this basis.

The Court turns last to Daly's argument that Scherr cannot prove breach because she cannot show the existence of a defect in the spring hinge on the date of the incident. A reasonable jury could find that Daly breached its duty to Scherr by failing to require more than 1.5 seconds for the spring hinge in her disability-accessible hotel room to close from a position of 70 degrees. Daly concedes that its plans and specifications provided as much. Accordingly, Daly is not entitled to summary judgment

25

on this ground.

**H.      Scherr's Motion for Reconsideration**

Scherr moves the Court to reconsider its previous ruling denying her motion for leave to file a fourth amended complaint.  The Court may grant a motion to reconsider to correct a manifest error of law or where newly discovered evidence dictates that the Court's original ruling should be overturned.  *Caisse Nationale De Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996).  "To support a motion for reconsideration based on newly discovered evidence, the moving party must show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence."  *Id.* at 1270.

Neither circumstance applies here.  In a prior order, the Court set July 28, 2009 as the deadline for amendment of the pleadings [docket no. 132].  Nearly one year later, on July 26, 2010, Scherr filed a motion to amend her complaint for the fourth time to include a cause of action for injunctive and declaratory relief and a demand for punitive damages.  The Court denied the motion as untimely and because it would require significant additional discovery, long after the deadline for completing discovery.

Scherr's motion to reconsider does not persuade the Court that its ruling was incorrect.  The Court therefore denies the motion.

## Conclusion

For the foregoing reasons, the Court denies the plaintiff's motion for partial summary judgment [docket no. 289], the defendants' motions for summary judgment

[docket nos. 248, 270, 273, 278]; and the plaintiff's motion for reconsideration [docket no. 339].  The case is set for a status hearing on October 20, 2010 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  October 13, 2010